## Herman Knuth v. Geo. A. Weiss Malting and Elevator Company.

1.  NEGLIGENCE—*When a Question of Fact and When of Law.*—When the evidence on material facts is conflicting, or when, on disputed facts, fair-minded men of ordinary intelligence may differ as to the inferences to be drawn, or where, on even a conceded state of facts, a different

conclusion would reasonably be reached by different minds, in all such cases negligence is a question of fact. Whenever there is a reasonable chance of conclusions differing as to the existence or non-existence of negligence, the question is for the jury, and it only becomes a question of law when, from the facts admitted or conclusively proved, there is no reasonable chance of reasonable minds reaching different conclusions.

2. SAME—*Held to be a Question for the Jury Under the Evidence in this Case.*—From a careful consideration of all the evidence in this case, the court concludes that it can not be held, as matter of law, that the plaintiff was guilty of negligence which contributed to the injury sued on, or that the defendant was not guilty of negligence which caused said injury, and therefore that these questions should have been submitted to the jury.

**Trespass on the Case,** for personal injuries. Error to the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1897. Reversed and remanded. Opinion filed December 16, 1897.

JAMES C. MCSHANE, attorney for plaintiff in error.

JOHN A. POST, attorney for defendant in error; SAMUEL S. PAGE, of counsel.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

The plaintiff in error was employed by defendant as foreman in a kiln room, which is described as follows:   The room is seventy-seven feet long, about thirty-nine feet wide, and the ceiling about twenty-four feet high.   The east wall is solid.   There is a row of windows in the west wall, facing on the street, which are about ten feet above the floor. There are also windows of the same height in the north and south wall facing on an alley.   There are two doors at the northeast corner, one leading through the north wall into an alley, the other through the east wall into an adjoining room.   The southeast corner is exactly the same in this regard.   The doors are about four feet above the floor, and there are steps leading up to them.   In the center of the room, about equi-distant from the north and south and east and west walls, are two brick furnaces extending from floor

to ceiling, the north furnace being 12½ feet from the north wall, and the south one the same distance from the south wall. The distance north and south between the furnaces is 26⅔ feet. The shafting extending along the east wall is about three feet six inches from the floor and extends out about two feet from the wall. The cog wheels on the shafting, which present a face view when viewing the elevation, are connected with, and are for the purpose of turning the shafting, which extends through the east wall. The largest cog wheels are about two feet in diameter. There are four incandescent lights in the room, situated 2⅔ feet from each end of each furnace. They are suspended from the ceiling by a cord, are about six feet from the floor, and are about the size of the incandescent lights used in offices and the court rooms. Of the nearest lights to the point of the accident, one was twenty-three feet and the other eighteen feet distant. The lights north and south of the furnaces ·can not be seen from the point of the accident.

It was the plaintiff's duty to attend to the fires in the furnaces, and to keep the shafting clean, and oil it every night. There was no guard, railing, or partition of any kind in front of the shafting. Plaintiff had been in defendant's employ about a year and a half before the accident hereinafter mentioned, the last two months of which time he was employed in the kiln room, the last month at night and the month before the last in the day time. April 27, 1894, about 9:30 o'clock p. m., the plaintiff's jacket or jumper was caught in one of the cog wheels and in attempting to extricate himself his left arm was crushed off immediately below the elbow, necessitating amputation.

.At the close of the plaintiff's evidence, the court, on motion of defendant's attorney, instructed the jury to find the defendant not guilty. A motion for a new trial was overruled and judgment rendered on the verdict.

The taking of the case from the jury is assigned as error. The court must have taken the case from the jury either because, in the opinion of the court, the evidence showed contributory negligence on the part of the plaintiff which

would preclude a recovery, or because the evidence did not sustain the allegations in the plaintiff's declaration of negligence of the defendant, or for both these reasons.

In Wabash Ry. Co. v. Brown, 152 Ill. 488, the court say : " Negligence is ordinarily a question of fact. When the evidence on material facts is conflicting, or when, on disputed facts, fair-minded men of ordinary intelligence may differ as to the inferences to be drawn, or where, on even a conceded state of facts, a different conclusion would reasonably be reached by different minds, in all such cases negligence is a question of fact. The fact to be determined is the existence or non-existence of negligence. With all the facts considered, if there is a reasonable chance of conclusions differing thereon, then it is a question for the jury. Negligence may become a question of law when, from the facts admitted or conclusively proved, there is no reasonable chance of reasonable minds reaching different conclusions."

What is here said is in conformity with prior decisions of the Supreme Court (Lake S. & M. S. Ry. Co. v. Johnsen, 135 Ill. 641, 647), and is the doctrine announced by text writers. Beach on Cont. Neg., Secs. 162, 163; Cooley on Torts, Secs. 670, 671.

Such being the law, the questions are, whether the evidence was such that fair-minded men of ordinary intelligence might reasonably differ as to whether the plaintiff was guilty of negligence which contributed to the injury, and whether such men might reasonably differ as to whether the defendant was guilty of negligence which caused the injury. These questions involve an examination of the evidence. A motion to instruct the jury to find for the defendant, is in the nature of a demurrer to the evidence, and admits not only all the evidence proves, but all it tends to prove. Ward v. City of Chicago, 15 Ill. App. 98; Pennsylvania Co. v. Conlan, 101 Ill. 93, 105-6; Frazer v. Howe et al., 106 Ill. 563, 573.

The evidence discloses the following circumstances : There was no railing or guard of any sort in front of the shafting and cog wheels, or between the shafting and cog wheels and the furnaces, where the plaintiff was required to work

tending the fires. The kiln room was built about a year before the accident, and the evidence shows that after it was built it was the intention of the company to place a guard in front of the shafting. Charles Veyhl, a millwright in the employ of the defendant, was called as a witness by the plaintiff, and testified that about March, 1893, he heard Mr. Weiss, the president of the defendant company, speak about a rail about the shaft along the east wall; that he, the president, told Hassman, the foreman, to take the measure for a wooden fence across there; and that Hassman measured for the fence, and told Mr. Weiss that a wooden fence would not look very well, that an iron one would look better. This witness further testified that the direction of Weiss, the president, was to measure for a fence around the shafting, extending from south to north about two feet west of the shafting; and that afterward he heard Hassman, the foreman, remark that he was to write to the iron makers to put up a fence there, but the witness says none was ever put up.

Henry Olson, a witness called by plaintiff, testified that he was a member of the firm of Olson & Tilman, in the machinery and millwright business; that he was employed by the defendant and acted as superintendent in putting up the shafting, and had a conversation with Weiss and Hassman about putting up a railing along the shafting; that Mr. Weiss, pointing to the room, said " there should be a railing around here; " and that at another time he heard Hassman say they were going to have a railing there, and that as he, witness, understood it, the contract was let. The plaintiff testified that about a month after he commenced working in the kiln room, he spoke to Hassman about guards or railing for the shafting; that he said " Mr. Hassman, that is a kind of dangerous place; I think there ought to be a guard along this rail," and Hassman said, " That is all right, Herman, I will 'tend to that." Also, that four or five days before the accident, he said to Hassman, " This is too dangerous for me altogether; I am going to quit this job, if there is not a railing put up here;" when Hassman said, " That is all

right, Herman, you can stay to work, and I will see that it is put up there right away." When Hassman said this to me, I said, "All right."

The plaintiff was the only witness as to the circumstances attending the accident and how it happened. He says that he had been cleaning and poking the fires for about ninety minutes, and had just finished that work, and was standing at the east door on the north side of the south furnace, when he heard a squeaking noise at the upright shaft, and walked toward the shaft trying to locate the place from which the noise came; that his eyes were somewhat dim from looking into the fires so long, and the lights were poor, and that, before reaching the place where the accident occurred, and about half way to that place, he stopped and rubbed his eyes with his hand, and they gradually grew better; that the lights were behind him, and as he walked over to the place of the accident, he could just discover the cogs. He then went on toward the upright shaft and stood about a foot and a half from the cog wheels and strained his ears to discover, if possible, where the squeaking noise came from. He had on a striped jacket, such as is known among working men as a "jumper." The north and south doors were open, and he says a draught of wind blew his jacket into the connecting cog wheels, and his left arm was caught. He says that one had to get pretty close to tell the exact place where the sound came from, also, that it was his duty to keep the shaft oiled and cleaned when needed. He says that when he halted, about half way from where he started to the place of the accident, Ferdinand Conkle, the engineer, came in and said there was something squeaking; that Conkle was about twenty-five or thirty feet away from him, and he recognized him by his voice, but could not tell by sight whether it was he. There were only two of the electric lights in the room which could have shed light on the cog wheels where the accident occurred, one of them about twenty-three and the other about eighteen feet distant from the cog wheels, and the witness testified that the room was very poorly lighted, and that he had complained to the night

foreman several times about the poor light—had said to him, "The place is very poorly lighted, a person can't hardly see."

Omitting comment on the plaintiff's evidence for the reason that the case must go to another jury if not otherwise disposed of, our conclusion, from a careful examination of all the evidence, is that it can not be held, as matter of law, that the plaintiff was guilty of negligence which contributed to the injury, or that the defendant was not guilty of negligence which caused the injury, and therefore that these questions should have been submitted to the jury.

We have made no reference to the declaration, because it is not claimed that it was not sufficient to admit the plaintiff's evidence.

The judgment will be reversed and the cause remanded.

Judge WINDES took no part in this decision.