Jelke, J.
In the court below the plaintiff’s decedent was the serv- ■ ant, and the defendant the master and the proprietor of a •slaughter house. The former had sole charge of the process •of rendering lard and of the tank used for that purpose. The tank was cylindrical, eight feet high,about.four feet in -diameter, standing upright with the bottom of the tank about three feet above the floor. The decedent usually Aided this tank, when about to render lard, with fats put in at- *644 the top, closed up the tank, and the contents were cooked by steam, then drawn out through a pipe and the cracklings were then taken out through an orifice at the bottom into a box receptacle about eight feet long, four feet wide and two- and one-half or three feet high. On November 6, 1899, while the cooking was going on,the decedent, it is claimed, discovered a leak at the orifice at the bottom of the tank, undertook to close up the leak, and through some manipulation opened the orifice so that the contents of the tank ran out and the heat, steam and lard was blown upon him so that he was burned and scalded, that he died from the effects-of the injury.
It is claimed that “the hook and hinge bolt and set screw and apparatus at the man hole” (by means of which the orifice at the bottom of the tank was closed) “were not of sufficient strength” to meet the requirements for which they were used,and further that said hook and hinge bolt and set. screw and apparatus were defective, out of repair, worn, loose, and in a dangerous condition. It is claimed that the decedent had notified the defendant of the insufficient, defective, improper and dangerous condition aforesaid, and that the defendant had promised to have it repaired.
The defendant denies the condition of the apparatus-above set forth, and denies that he had been notified that such condition existed,or that he promised to have the same repaired, and he pleads contributory negligence on behalf of decedent.
The trial resulted in a verdict for the plaintiff in the sum .of $1875.00.
The defendant filed a motion for a new trial, and to the-overruling of said motion and the judgment rendered below error is prosecuted in this court on account of the several errors claimed to have been committed at the trial which are-duly shown, by objection and exception on the record.
The first objection is to a certain line of testimony relative to indemnity insurance against employers’ liability for accident to employees held by the defendant Mr.Rupp. The-testimony on this point as disclosed by the record is as follows:
“Q. Mrs. Schubert, state to the jury what conversation you had with Mr.Rupp at that time. A. Mr. Rupp earner *645 to my house in the evening, about half an hour after my husband’s death, and he called me ídío the next room, and he said “Mrs. Schubert,have you any money?’ I said ‘No sir, I have not.’ He said, ‘Was your husband insured?’ I said, ‘Yes, he was insured in the Prudential’, and I told him how much, two hundred and fifty dollars, and he said ‘Well, never mind,don’t worry, I have your husband insur ed in the Accidental Insurance Company for five thousand dollars for the benefit of you and your children.’
(Defendant objected to and moved to strike out foregoing answer as to the conversation between witness and Mr. Rupp, on the ground that it is incompetent,that it does not throw any light on the controversy before the jury.)
“Th8 Court: Is that all that took place at that time? A. Yes, sir.
“The Court: How do you claim that is competent evidence, gentlemen?
“Mr. Shepherd: It is in the nature of an admission of Mr. Rupp’s negligence, in the nature of an admission as to the improper condition of the machinery, and an admission that he is not the real party in interest; he has no interest in it so far as he is concerned individually, that he is protected here by the Insurance Company, who are making this defense for him and not he himself; in order to show who was interested in this matter it ought all to go to the jury.
“Mr. Andrews: We except to all the remarks of counsel made before the jury, and ask the court to instruct the jury that they are not to be considered by them.
“The Court: I cannot see how it would be in the nature of an admission as to the improper condition of the machinery, There has not been anything said,the witness does not state anything he said about that, All you claim is he said he had this man insured for $5,000. That would not show whether he was negligent or not. That will have to be stricken out.
“To which ruling of the court the plaintiff excepted.
“Mr. Andrews: We ask the court now to say to the jury that all that testimony and the remarks of counsel about insurance have nothing whatever to do with this case.
“The Court: The jury,of course, will be governed by the evidence; the statements of counsel are not evidence.’’
*646 Up to this point we are of opinion that the court below ruled correctly.
In the cross examination of the defendant by Mr. Shep« herd, of counsel for plaintiff, the following appears:
“Q, I will ask you,Mr. Rupp,if you had not this man's life insured against accident?
“Objected to by defendantas incompetent and irrelevant; which objection the court overruled; to which ruling of the court defendant excepted.
“Mr, Andrews: If it is in writing, that is the best evidence
“The Court: The plaintiff is not bound by the writing,. The witness may answer the question.
“To which ruling of the court defendant excepted.
“A. I have my hands insured against accident.
“Defendant thereupon moved to strike out foregoing answer; which motion the court overruled; to which ruling of the court defendant excepted,
“Q, Ail of them?
“Objected to by defendant,as incompetent; objection over» ruled; to which ruling of the court defendant excepted, A. Yes, sir.
“Thereupon defendant moved to strike-out foregoing answer; which motion the court overruled; to which ruling of the court defendant exce.pted.
“Q, State if you did not tell Mrs. Schubert, the widow of Charles Schubert, the day that he died, that you had a five thousand dollar accident insurance policy on your hands against accident?
“Objected to by defendant,as incompetent; objection overruled; to which ruling of the court defendant excepted,
“A. I did tell her I had an accident policy of $5,000 on the hands.
“Thereupon defendant objected to and moved to strike out foregoing answer; which motion the court overruled, to which ruling dí the court defendant excepted.
“Q, I will ask you,Mr. Rupp,if the Insurance Company has ever paid you for this accident?
“Objected to by defendant,as incompetent; objection overruled; to which ruling of the court defendant excepted.
“A. No, sir.
*647 Thereupon defendant objected to and moved to strike out foregoing answer; which motion the court overruled; to which ruling of the court defendant excepted.
“Q. Mr.Rupp, state if this Insurance Company has not employed attorneys in this case for the purpose of defeating the payment of that five thousand dollar claim or policy?
“Objected to by counsel for defendant, as incompetent; objection overruled, to which ruling of the court defendant excepted.
“A. I think they have.
“Thereupon defendant objected to, and moved to strike out, foregoing answer; which motion the court overruled; to which ruling of the court defendant excepted.”
The following appears in the charge of the court:
“If the evidence shows you that Mr. Rupp had insured with a company, or with an individual, that in the event of any loss or damage in his factory they would pay it, that does not increase Mr. Rupp’s risk, that does not add anything to the rights of Mr Schubert or to his representative. Mr. Rupp has a right to do that, every good business man has a right to do that as he sees fit, and it does not increase his risk by so doing; and the only purpose for which this court allowed that fact to go to the jury is,it is to be weighed by you with other facts as tending to show, if it does show, it is left exclusively with you to say, whether a man with his property insured in that way would be as diligent, would be as careful, knowing that he was insured, as if he were not. It is simply a question of fact for you to weigh, namely as to his negligence or want of care. But it cannot be used to increase Mr. Rupp’s liability any more than, if he did not have the insurance.”
We are of opinion that the admission of any evidence on the subject of this indemnity insurance, and the charge of the court relative thereto, was erroneous. This is comparatively a new question, and we have been able to find but one authority directly in point,and in that case it was somewhat of an obiter, but we are of opinion that the fact that an employer takes out indemnity insurance as against liability for the personal injury of his employees in no way affects the employer’s liability or the employee’s right to recover for such injury or death; neither has the fact that the *648 employer has such insurance any tendency to show that he may have been less careful in providing for the safety of his employe, The relaxation of care which might be suggested by reason of such insurance, would not only be wrong to the employee, but if done consciously, would be in bad faith to the insurer. The insured must certainly maintain the same or ordinary care as to the safety of th§ employee as he would without such insurance.
The case above referred to was the case of Manly v. Minneapolis Paint Co., 78 N. W. Rep. 1050:
“The fact that the master holds an indemnity policy insuring him against liability on account of injuries to his employes by his negligence, and requiring the company to defend an action against him on account of such injuries, and it does so,is not evidence tending to show an admission, of negligence on the part of the insured or insurer.”
(Syllabus by the Court.)
“Evidence was received without objection on the trial to the effect that the defendant was insured against loss from liability for damages on account of bodily injuries suffered by its employes caused by its negligence, and that the insurance company, at the request of the defendant, was defending this case. The plaintiff claims that this is an. admission of negligence in the premises on the part of the defendant and insurance company, which should have been submitted to the jury. The case of Barg v. Bousfield, 6 Minn. 3, 68 N. W. 4, relied on in support of the claim, is not in point, for the indemnity policy in the case cited was received in evidence as having a bearing on the question whether the person who executed the work, in the doing of which plaintiff was injured, was an independent contractor. The fact that the master holds such an indemnity policy, and requires the insurance company to defend, and it does •so, an action against him by an employe for injuries caused by his alleged negligence, is not admissible, as tending to show an admission of negligence on his part or of the company defending.” Also see the cases of Trenton Pass. Co. v. Guarantors’ Liability Co , 37 Atlantic Rep., 609 (New Jersey); Boston & Albany Ry. Co. v. Mercantile Trust & Deposit Co., 34 Atlantic Rep. 778 (Maryland) which, although not directly in point, shed some light on the subject.
*649 We are therefore of opinion that the trial court erred in the admission of the testimony on this point in Mr, Rupp’s cross-examination and in its charge to the jury, and that such error was prejudicial.
It is further claimed that the court erred in its modification of the second and third special charges requested by the defendant to be given to the jury,
We are of opinion that the court was correct in the giving of these charges as requested in the first instance and before the argument, but toward the end of the general charge the court said, taking up the second special charge and reading it as follows:
“If you find that there was a defect in the appliances which was the proximate cause of the injury, and that the deceased, Charles Schubert, knew of such defect long enough before such injury to enable him to quit defendant’s service, then the-plaintiff cannot recover unless said deceased communicated such defect to the defendant and was promised by the defendant that the defect would be remedied.
“I think that is the whole case. No man is bound to work for another where his life is in danger; he can quit.
“But in applying that principle you apply it as you would to practical affairs, as men ordinarily deal with each other, the ordinary affairs of mankind; how do men ordinarily act toward each other in affairs of this kind? The jury is not ■expected to call up some hypercritical method of disposing of this question, but you are to look at it in an ordinary common sense way. How do men act with other?
“While a man has a right to quit,no man can compel another person to work for him while his life is in danger; as before stated, he does so at his own risk, if he knew of this •soon enough to quit he could have quit.
“But it is for you to say, under all the circumstances, whether or not there were any promises made to him; if you find there was any that that would be repaired, and whether he was justified under the circumstances to remain there or not.”
And then taking up the third special charge and reading it:
“If the decedent was injured through any defect in the ■appliances of which he had prior knowledge, although he *650 may have suggested a different or better method which the defendant promised to adopt, still plaintiff cannot recover unless ddecedent told the defendant of the particular defect causing the injury and the defendant promised to have the same remediéd.” Continued as follows:
“As before stated, tirat is the substance of the whole case.
“After you have carefully examined all this evidence, and weighed it, and you should find in the case that the plaintiff, with these instructions that I have given you, was acting rightfully and properly, that he himself was not to blame, but that George Rupp was to blame, then you will find a verdict in favor of the plaintiff in this case,
“On the other hand, if you find that George Rupp was not to blame, then it is your duty to find a verdict in favor of the defendant.
“Or,if you find that George Rupp was to blame,and that Charles Schubert was to blame for the accident, then you will find a verdict in favor of the defendant; because, as before stated, where both are to blame the law does not seek to apportion the respective amount each is to blame, and it leaves them where it finds them, Before plaintiff can recover, the deceased must have been without blame, and defendant must be to blame, as I have explained to you.” Revised Statute 5190, sub-section 5, provides as follows:
“When the evidence is concluded, either party may present written instructions to the court on matters of law, and request the same to be given to the jury, which instructions shall be given or refused by the court before the argument, to the jury is commenced.” And sub-section 7:
“A charge or instruction, when so written and given, shall not be orally qualified, modified or in any manner explained to the jury by the court; and all written charges and instructions shall be taken by the jurors in their retirement? and returned with their verdict into court, and shall remain on file with the papers of the ease.”
We are of opinion that the modification, explanation and amplification of these special charges by the court was in violation of the prohibition contained in paragraph seven of this section of the statute. We do not mean to say that the court having given the special charges as requested is pre *651 vented from treating of the same subject in its general charge, but it is manifestly contrary- to the statute for the court, having read the special charge, to proceed orally to qualify, modify, or in any manner explain the particular special charge to the jury, as was done in this case, We are therefore of opinion that there was error in this regard prejudicial to the defendant.
Plaintiff in error objects to the following paragraph of the court’s charge:
“But if he communicated that to Mr. Rupp; if he gave any information to him that would lead a reasonable man to investigate, to examine the condition of the thing at the time, and if Mr. Rupp could by the exercise of ordinary prudence have ascertained the condition of the machinery, that it was out of repair; if he could have ascertained that by the exercise of ordinary care,and he failed to do so, and his failure to do so, and the disrepair of the machinery was the proximate cost of the death of Mr. Schubert, then the plaintiff in this case can recover, and it will be your duty to find some amount for him, such as the evidence shows you is life was worth to his wife and to his children.’’
If this paragraph stood by itself the contention of plaintiff in error that it does not contain a statement that in order to make the defendant liable it was necessary that he should-have promised or in some way indicated to his employe Schubert that he would have the necessary repairs made, or the defect remedied, or the machinery strengthened,and that, the absence of such statement is error would be correct; but. taking the whole charge as it stands with its context, where-the court speaks of the necessity of such a promise on behalf of the defendant Rupp, and of the manner and informal way in which it could have been made in order to make him. liable, it is not erroneous,
“A charge is to be construed as a whole, and if so construed the law is correctly and intelligently given,the omission to embrace in each paragraph every condition to a recovery, where not calculated to mislead, is not erroneous.’’ Ohio & Ind. Torpedo Co. v. Fishburn, 61 Ohio St., 608; Curry v. Cincinnati, 12 C. C., 736; Monroeville v. Weihl, 13 C. C., 689.
*652 While the paragraph selected is not a perfect or complete statement of the law in this regard, we think that the charge as a whole states the law fairly; but having concluded to reverse this case on the two grounds first mentioned, we call attention to the defect in this paragraph in order that it may be corrected at a subsequent trial,
It is further contended that the trial court erred at the close of its charge where it spoke referring to the general and special verdicts, as follows:
“In making up those verdicts they will have to be consistent with each other.
“For instance, it would not do to say you find in favor •of plaintiff,and then find on this special verdict that George Rupp had no knowledge of this defect, or if Charles Schubert had knowledge of it he kept it to himself; the verdict must be consistent. Tf you find that George Rupp had no knowledge of the defect, then it would be your duty to find •on this verdict in favor of defendant. I am only explaining these matters to you so you will be able to make up your verdict in a proper, consistent manner.”
This part of the charge is not clear as to just how the desired consistency is to be reached. Of course, the jury is not to bend or twist their finding upon the special interrogatories away from what they believe to be the truth in order to make their answers conform to the general verdict. It is the general verdict which must conform to the special finding. True the statute says, Revised Statutes, section •5201:
“The court shall instruct the jurors,if they render a general verdict, to find specially upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon, and the verdict and finding must be filed with the clerk and entered on the journal.”
But a jury must not be permitted to think that for the purpose of sustaining a general verdict which they may desire to bring in they are, contrary to their convictions and independent of the truth, to make an answer with a view primarily to its consistency with a general verdict. Revised •Statute 5202. When the special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court may give judgment accordingly. Village of Middleport v. Taylor, 2 C. C., 366.
Morey, Andrews & Morey, for Plaintiff in Error.
Shepherd, & Shaffer for Defendant in Error,
We do not, however, in this regard find error enough of a prejudicial character to reverse the case, had we not concluded to do so as above.
Judgment, of the court below will be reversed and case remanded for a new trial.
Note — Morey, Andrewt & Morey, for Plaintiff in Error: It was error in the trial court to admit over the objections and under the exceptions of defendant, the plaintiff’s evidence making it appear that the defendant carried an insurance policy indemnifying him against loss by reason of damages recovered against him for injury to employes in his service, and to instruct the jury that this evidence was submitted to them, not for the purpose of enlarging or affecting the liability to defendant, Ijut as a circumstance which the jury might find tended to make him more careless of the safety of his employes than he would have been had he not felt himself thus indemnified against loss, because, First: The evidence and the court’s charge invited the jury to turn their minds from the actualities of the case and enter into the regions of speculation, and suggested to the jury that instead of making the case.turn upon whether there was sufficient proof or not of the defendant’s negligence, they might surmise that a man carrying an indemnity policy would be likely to be,and that the defendant, therefore, had been careless. And, Second, This evidence and the charge of the court suggested that the very fact that defendant below carried an insurance policy,was a matter of reprehension rather than commendation, whereas the law rather commends an employer for his care in thus providing a fund which enables him to discharge a liability to his employes when such liability arises. Trenton Pass. R. Co. v. Guarantors Etc. Co., N. J., 1897; 37 Atl. p., 609; B. & A. Co. v. Mercantile Etc. Co. Md. 1896; 34 Atl. p. 778 Manly v. Minneapolis Paint Co. 78 N. W., 105.
(2.) The court erred by, after the argument, in his general change, repeating and materially modifying the instructions which, after the close of the evidence and before argument, at the request of counsel for defendant below, had been given to the jury. Sec. 5190 R. S.
(3.) The court erred in charging the jury that if the deceased communicated the condition of the machinery to Mr. Rupp or gave him any information that would have caused him as a reasonable man to investigate, and that he thereby might have discovered that the machinery was out of repair and failed to do so, and such failure and disrepair of the machinery was the proximate cause of Mr. Schubert’s death, then the plaintiff was entitled to recover. This made the defendant liable regardless of how the decedent conducted himself, on the single condition that the decedent communicated to the defendant the alleged defect of machinery. There are ordinarily three *654 elements necessary to fix defendant’s liability, to wit: Defective machinery; knowledge or opportunity to know of such defect on part of the master; and want of knowledge on part of the servant. But the court in its charge instructed the jury that no matter how well the servant knew of the defect be-could unload the responsibility to take all the greater care which the law oasts upon him, by simply telling the master.
The law presumes that when a servant has knowledge of defective machinery causing danger, and continues in the master’s service, he is guilty of contributory negligence, and although this presumption may be overcome by showing that he complained to the master and that the latter promised to make repairs, still the servant must observe the care commensurate with the danger which he knows exists. Again it is not the servant’s complaint, but the master’s promise to make repairs-that relieves the former from the presumption of contributory negligence on his part. Wood on Master and Servant, sec. 379;. 110 Mass. p. 240; 8 Alien p. 411; 76 Penn. St. p. 389.
The effect of the charge as given was really a decision by the court of an issue of fact, and to that extent withdrawing from the jury a very essential controversy in regard to the-facts. The real issue was whether or not the defendant was negligent in knowingly maintaining the apparatus in the defective condition, and whether the decedent was guilty of contributory negligence in continuing his service witn knowledge-of the defect, and the fact that be communicated the condition to the master was only one circumstance throwing light upon whether or not he was guilty of contributory negligence, and the whole controversy was a matter upon which the jury should-pass. 83 Fed. 689; 72 Ill. App. 389; 100 U. S. 213 (25 L. C. P., 612); 40 Ohio St, 148; 18 C. C. 58; 10 W. L. B., 208.