## Richmond.

## WASHINGTON SOUTHERN RAILWAY CO. V. GROVE'S ADMINIS-
## TRATOR.

### March 14, 1912.

1. DEMURRER TO EVIDENCE—*Contributory Negligence—Burden of Proof.*—
   Contributory negligence is an affirmative defense, and, in a personal
   injury action, upon a demurrer to the evidence by the defendant,
   the burden of proving the contributory negligence of the plaintiff
   is upon the demurrant, unless it is disclosed by the demurree's evi-
   dence, or can be fairly inferred from all the circumstances of the case.

2. MASTER AND SERVANT—*Disobedience of Orders—Resulting Injury—*
   *Railroads.*—In an action against a railroad company to recover for
   the wrongful death of a brakeman, if it appears that the brakeman
   disobeyed the orders of the conductor (who had authority over him)
   to remain at a switch until his train reached that point, and that his
   disobedience proximately contributed to the injury resulting in his
   death, there can be no recovery against the railroad company.

3. DEMURRER TO EVIDENCE—*Demurrant's Evidence—When Considered.*—
   Evidence favorable to the demurrant, but not in conflict with that
   of the demurree, is not excluded from consideration on a demurrer to
   the evidence, but is entitled to the same consideration as if no demurrer
   to the evidence had been interposed.

4. MASTER AND SERVANT—*Railroad Yards—Vigilance of Servants.*—A
   railroad yard is a dangerous place, and those engaged upon it are
   exposed to more than ordinary peril, and should be on the alert and
   vigilant to guard against injury from the movement of engines and cars,
   always to be expected, and for an injury resulting from the want of
   such vigilance there can be no recovery against the railroad company.
   It is as much the duty of the servant to provide for his own safety
   from such dangers as are known to him, or are discoverable by ordinary
   care on his part, as it is the duty of the master to provide for him.

5. MASTER AND SERVANT—*Injury to Servant—Disobedience of Specific Order—*
   *Presumption of Negligence.*—Where an injury results to a servant
   from his failure to comply with a *specific order* given by the master
   or his representative, contributory negligence on the part of the servant
   should be inferred, as a matter of law, even though such an inference
   might not be a necessary one if the order were not a factor in the case.

Error to a judgment of the Circuit Court of Alexandria county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Hill Carter* and *Francis L. Smith,* for the plaintiff in error.

*Leckie, Fulton & Cox, Joseph T. Sherrier, Lewis H. Machen,* and *Moncure, Tebbs & Gaines,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

Silas B. Grove's administrator brought this action to recover damages for the death of his intestate, which he alleges was occasioned by the negligence of the defendant railway company. The defendant demurred to the evidence, and the circuit court gave judgment for the plaintiff for the damages ascertained by the verdict, which judgment we are asked to review and reverse.

The defendant company was, on the 25th day of January, 1909, engaged in the business of a common carrier by railroad in Alexandria county, Virginia, and in the conduct of its business as such owned and controlled certain yards and tracks known as the Potomac Yards. Within these yards there are about fifty-two and one-half miles of trackage, consisting of about one hundred tracks and two hundred switches. The yards are used by the defendant company in handling its own cars and those of four other railroads, including the Southern Railway Company. All movements in the yards are made under the direction and supervision of the defendant company.

At the date of the accident causing the death of Grove—viz., January 25, 1909—about 2,000 cars were handled each day within the yards. The crews operating trains belonging to other railroad companies become subject to the control and direction of the defendant company as soon as they enter the yard limits. Among the tracks contained within these yards was one known as the "naught" track, and another known as the "thoroughfare"

track, which was connected with the "naught" track by means of a switch, and a portion of the "naught" track south of said switch was known as the "ladder" track.

At the time of this accident Grove was an experienced brakeman, thoroughly familiar with the method of operating the yards, the trains, and the cars handled, having been in the employ of the defendant company at its said yard for the previous year. Upon the occasion of the accident by which Grove received his injuries he was, in his usual employment, engaged as brakeman on a train of twenty-eight freight cars, which had been made up on the shop repair tracks in the yards, and was being pushed by an engine up and over the "thoroughfare" track to the point where that track runs into and adjoins "naught" track, and were intended to be moved over "naught" track after passing through and over the switch connecting that track with "thoroughfare" track. This train was being moved in a northerly direction, with the engine at the south end pushing and backing it, and at the north end or front of the train was a car loaded with lumber. Grove had been sent by Conductor Bayliss, who was in charge of this train, forward, with instructions to set the switch for the passage of that train from the "thoroughfare" track to the "naught" track, and, as he (Bayliss) states, to remain there until the front of his train reached that point. After giving this order, Conductor Bayliss walked back down his train about ten car lengths from the front, and there got up on top of one of the cars. In the meantime Grove had, after setting the switch, walked back to the front end of his train and mounted the car loaded with lumber. During this time a train of the Southern Railway Company was moving north along and over "naught" track to the point where it was connected with the "thoroughfare" track by the switch just mentioned, said train consisting of an engine and three cars, with the engine in front carrying a headlight, causing a brilliant light in advance of the approaching train, which could be seen when a thousand feet away by a person standing at the switch, and thence all the way in its progress to that point. As the Southern train approached the switch, it was found set against the train's movement, and thereupon a brakeman from that train was sent forward to change the switch

for the passage of the Southern train over it; but this train, instead of having stopped clear of the switch connecting the two tracks, had run upon the frog of the switch so as to foul the connection at that point and prevent a train running over the "thoroughfare" track from passing over the switch to the "naught" track without colliding with it. After the engine of the Southern train ran on the switch and fouled it, a ·brakeman of that train, who was on the left side of the engine, got down upon the ground, walked around the engine to the switch, and was just about to throw it for his train, when he heard some one shout, "Look out!" and the defendant company's (Washington Southern) train ran into the Southern train at the frog, the defendant's front or leading car was derailed by the collision and turned upon its side, ·the lumber with which it was loaded was thrown out, and the body of the deceased, Grove, was found under the lumber on the west side of the track. Grove, the front brakemen of his train, was subject to the orders of his conductor, who had authority to assign the brakeman to the places where they were to work and to prescribe the duties to be performed by them.

The contentions of the plaintiff are that the collision between the said trains resulted from the negligence of the defendant company, (1) in making up the train upon which Grove was employed in an improper manner, so that it had to be operated at the point of collision at an unreasonable and dangerous rate of speed, and at a rate in excess of that limited by the rules and custom of the defendant company; (2) in giving improper and conflicting orders to the crews of the respective trains, and without giving each of said crews information as to the order given the other, and without taking any precaution whatever to prevent a collision; and (3) in causing and allowing the Southern train, in violation of the rules and practice of the defendant company, to be stopped upon the switch by its crew, who at the time were under the defendant company's control and direction.

On the other hand, it is the contention of the defendant company that it was not guilty of negligence resulting in the injury to Grove, but that, had he obeyed the instructions given him by his superior (Conductor Bayliss) and remained at his post of duty, there would have been no accident, and certainly he would

not have been injured, for, standing at the switch, he could have seen the Southern Railway engine with its bright headlight when a thousand feet distant, and thence all the way to the scene of the accident; he would have had an unobstructed view of 500 feet of the track over which his own train was going, and which he knew was approaching, for, as a member of its crew, he had been sent forward to throw the switch for it, and told to remain there as a sentinel to guard and protect its approach to that point; and, had he performed his duty and remained at his post, he could not have failed to observe the approach of the Southern Railway train, whose progress he could have arrested, and prevented its engine from fouling the switch, and in so doing would himself have been in a place of safety.

It very clearly appears from the evidence that neither the speed of the train, nor the darkness of the night, nor the length of the train upon which Grove was at work, caused the accident; but upon the demurrer to the evidence it does appear that the defendant company was negligent in the conduct of its business upon its shifting yards at Alexandria on the occasion of the accident in which Grove sustained his fatal injuries, and, therefore, the sole question for our decision is whether or not his own negligence contributed proximately with that of the defendant company, causing his injuries.

Unquestionably, contributory negligence is an affirmative defense, and the burden of establishing it is upon the demurrant, unless it is disclosed by the demurree's evidence, or can be fairly inferred from all the circumstances of the case; but on the question of contributory negligence in this case, which consists, if at all, in disobedience by the deceased of the orders of Conductor Bayliss, as well as his failure to see the engine and train of the Southern Railway Company before his train struck it, which, as the evidence clearly shows, he could have done had he been at the switch where the accident occurred, authority is abundant to sustain the proposition that if Grove disobeyed the orders of Conductor Bayliss to remain at the switch until his train reached that point, which neglect or failure of duty contributed to injuries to him, resulting in his death, the plaintiff cannot recover in this action.

The evidence as to Grove's neglect of duty and disobedience

of the orders of Conductor Bayliss, viewed as upon a demurrer to evidence, is as follows: Conductor Bayliss, who was in charge of the train on which Grove was at work, and who was in control of both the train and Grove, testifying as a witness summoned by the plaintiff, but introduced by the defendant company, said: "I instructed Mr. Grove in the shop to go to the switch and throw it, and stay there until the north end of the train came, after we got train made up on the 'naught' track on to the 'thoroughfare' track. Also went to the rear end of the train with him, and gave him P. Y. 702, which states the numbers and initials of the train, to deliver to the north-bound hump, and instructed him then to go to the switch and throw it, and stay there until the train came. He went on up to the switch and gave a signal it was all right to come back; then I went on back up about ten cars, pulled up; after he stopped, I gave the engineman a signal to come on back, and we came on back." The witness further states that his instruction to Grove to stay at the switch until the train arrived there was in accordance with the customary rule, and that when Grove gave him the signal for the train to come on back, he (Grove) was standing on the ground at the switch.

As conflicting with this evidence given by Bayliss, so as to require its exclusion from consideration in determining whether or not the trial court erred in overruling the defendant company's demurrer to the evidence, the testimony given by Murphy, who was also a brakeman under Conductor Bayliss on the occasion of the accident to Grove, is alone relied on by the plaintiff.

It will be observed that Bayliss said that twice on the night of the accident he instructed Grove as to what he should do in connection with the operation of the train of twenty-eight cars made up at the shops in the Potomac Yards, and to be moved up and over the "thoroughfare" track to the point where that track runs into and joins another track known as "naught" track, intending that the twenty-eight cars were to be moved over "naught" track after passing through and over the switch connecting that track with the "thoroughfare" track. Murphy, in speaking of the first instructions given by Conductor Bayliss to Grove, said he heard him say, "You go and line up switches up naught track." When asked, with respect to his said state-

ment, "Was that all the instructions or directions he gave him?" answered: "In my hearing it was." Now Murphy does not pretend to deny that he was not in a position to hear all that passed between Bayliss and Grove, but states facts and circumstances going to show that all his statement amounts to or was intended to mean was that he only heard a part of what passed between Bayliss and Grove when the former first directed the latter as to what he should do in connection with the moving of the train. Moreover, the other facts and circumstances shown clearly establish that the witness Murphy was necessarily separated from both Bayliss and Grove before they last parted and the signal for the train to back up to the switch was given, and he does not attempt to locate either until he received that signal.

Upon this state of the evidence, the testimony given by Bayliss, that he instructed Grove to remain at the switch until the rear end of the train reached that point, is uncontradicted.

The rule governing where a case is before us upon a demurrer to evidence does not require the exclusion from consideration of evidence favorable to the demurrant with which the evidence of demurree does not conflict; but in such a case the evidence of the demurrant as to which there is no conflict or contradiction is entitled to the same consideration as if the demurrer to evidence had not been interposed. *Russell Creek Coal Co.* v. *Wells*, 96 Va. 416, 31 S. E. 614.

The evidence, as we view it, is conclusive that, if Grove had obeyed the instructions given him by Bayliss, the accident in which he lost his life would not have happened.

Plaintiff's witness, R. M. Colvin, general yard-master of the Potomac Yards, testifies that, owing to the place where the work (of shifting cars on the yards) was conducted and the nature of the business transacted, the only way to move the trains was by requiring each train crew to protect themselves by the exercise of the vigilance and care required under the circumstances; and the witness Murphy says, with reference to instructions given him by the conductor in the movement of freight trains in the yards, "He would always tell us to line up the switches and look out for the head end of the train." Grove, instead of remaining, as instructed, at the switch, and keeping a look-out for the head

end of an approaching train, which could only have been effectively executed by him when standing on the ground, left that position, and met his train before it reached the switch, and mounted to the top of its front car, loaded with lumber, from which position he could not by a proper signal stop any other train approaching the switch, as he could have done had he remained on the ground at the switch. Very clearly, from the evidence, if Grove had remained at the switch, he could not have failed to see the approaching engine and train of the Southern Railway Company, as it was approaching the switch, and avoided, at least, an injury to himself, either by signaling that train, or by placing himself beyond danger from the inevitable collision of the two trains.

It is a well-settled principle of law that it is as much the duty of the servant to provide for his own safety from such dangers as are known to him, or are discoverable by ordinary care on his part, as it is the duty of the master to provide for him. *Russell Creek Coal Co.* v. *Wells, supra,* and authorities cited; *Pittard's Adm'r* v. *Southern Ry. Co.,* 107 Va. 1, 57 S. E. 501; *N. & W. Ry. Co.* v. *Belcher,* 107 Va. 342, 58 S. E. 579.

The duty of a servant engaged in the carrying on of dangerous work to exercise care for his own safety is commensurate with such dangers as are known to him or are discernable by ordinary care on his part.

"The yard of a railroad is the scene of ceaseless activity, the shifting of cars and the movement of engines; and, in order to carry on their work and promptly discharge their duties, there must be a careful economy of time, and, as far as possible, every movement must be utilized. Under such conditions, those engaged within yard limits are exposed to more than ordinary peril, and should be on the alert and vigilant to guard against injury from the movement of engines and cars, always to be expected." *Pittard* v. *Southern Ry. Co., supra.*

1 Labatt on Master and Servant, sec. 334, says: "The general effect of authorities is that, where the evidence shows that the injury complained of was due to the fact that, at the time of the accident, the servant was occupying a position which was obviously more dangerous than another which was available, the *prima*

*facie* presumption of contributory negligence arises, which will warrant a court in declaring, as a matter of law, that the action cannot be maintained." *Holland* v. *S. A. L. Ry. Co.*, 143 N. E. 435, 38 A. & M. R. R. Cas. (N. S.) 787, 58 S. E. 835.

Section 363 of Labatt on Master and Servant, *supra*, further says: "According to nearly all the decisions, contributory negligence should be inferred, as a matter of law, whenever the injury resulted from the servant's non-compliance with a *specific order* given by the master or his representative, even though such inference might not be a necessary one if the order were not a factor in the case.   This doctrine is applicable whether the order related to the position which the servant was to take at a given time or place, or to the manner in which an act incident to his duties was to be done.   *   *   *"

The doctrine just stated has been repeatedly sanctioned in the opinions of this court.

In *R. & D. R. R. Co.* v. *Risdon's Adm'r*, 87 Va. 335, 12 S. E. 786, where a flagman left his switch, although told to remain there, and entered a car of a train standing on a side track, where he was killed in a collision, it was held that his disobedience of orders was contributory negligence, and barred a recovery for his death, the opinion of the court saying, "His death was caused, not by the defendant's negligence, but by his own disobedience of instructions."

In the case here it plainly appears from plaintiff's own evidence that if his decedent, Grove, had performed the duty resting upon him of keeping a proper look-out for the dangers to be expected in the performance of the work in which he, an experienced employee, was engaged, he would have seen the Southern engine and train a long distance before he or it reached the switch, whereby injury to him could, and doubtless would, have been avoided. But if the negligence of Grove in not keeping a proper look-out for approaching trains in this crowded and constantly used railroad yard was not sufficient to defeat a recovery in this action, there is also no escape from the conclusion that his disobedience of the order of Conductor Bayliss, to throw the switch and remain there until the front end of his train arrived at that point, so contributed to the accident causing his death as to bar a recovery of damages therefor.

The effort of the plaintiff to prove that the known rule which Grove was instructed by Bayliss to observe on the occasion of this accident had, with the knowledge of the defendant company, been habitually violated, signally failed. If this, however, were not the case, the evidence of Bayliss as to the instructions given by him to Grove is, as we have seen, uncontradicted, and this evidence shows that Grove's death was caused by his disobedience of orders in failing to remain at the switch, and, instead, leaving the switch, a place of safety, and going some distance therefrom and getting up on the car-load of lumber. Had he remained at the switch until the train got there, and then attempted to get on it, and been injured because the train was moving at an improper speed, the case would have been quite different; but this case, upon the evidence, is that he not only neglected his duty under the custom and conditions known to him, but disobeyed the positive instructions given him, whereby the right of recovery in this action is defeated. Labatt on Master and Servant, *supra; Shenandoah, &c. R. Co.* v. *Lucado,* 86 Va. 390, 10 S. E. 422; *R. & D. R. R. Co.* v. *Risdon's Adm'r, supra; Southern Ry. Co.* v. *Johnson,* 111 Va. 499, 69 S. E. 323, and authorities there cited.

It follows that we are of opinion that the circuit court erred in its judgment for the plaintiff upon the demurrer to the evidence, which judgment has to be reversed, and this court will proceed to enter such judgment as the circuit court ought to have entered.

*Reversed.*