VIRGINIA IRON, COAL AND COKE CO. V. ASBURY'S ADMINIS-
TRATOR.

September 9, 1915.

1. MASTER AND SERVANT—*Negligence—Duty of Servant to Be Ob-
servant.*—It is the duty of the servant to exercise care to
avoid injuries to himself. He is under as great obligation to
provide for his own safety from such dangers as are known
to him, or are discernible by ordinary care on his part, as the
master is to provide for him. He must take ordinary care
to learn the dangers which are likely to beset him in the ser-
vice. He must not go blindly to his work where there is
danger. He must inform himself.

2. MINES AND MINERALS—*Act of 1912—Object of Act—Watchful-
ness of Servant—Props and Timbers.*—The mining act (Acts
1912, p. 419) was enacted to promote the safety of miners, but
was not intended to relieve them from exercising that degree
of care for their own safety which the law required before its
enactment. It clearly imposes upon the miner the duty of
watchful inspection in order to discover when props are needed,
then to order them, and when furnished to place them prop-
erly so as to make his place secure. The statute then enjoins
upon the miner the duty of staying out of his working place
until sufficient timbers have been furnished to make the same
secure. Both the common law and the statute make it the
duty of miners, engaged in the hazardous occupation of mining
coal, to be watchful for the dangers likely to arise as a result
of the ever changing conditions of the rooms and entries in
which they are working.

3. MINES AND MINERALS—*Act of 1912—Purpose of Act—Duty Im-
posed by Act—Negligence of Miner—Case at Bar.*—The pur-
pose of the mining statute, in requiring the miner to stay out
of his working place until sufficient timbers are furnished,
was to prevent the miner from subjecting himself to unneces-
sary risk. It does not permit him to stay in his working place
until the danger is so great and immediate that no person of
ordinary prudence would remain, but the duty is enjoined
upon him to leave as soon as his place becomes insecure from

lack of props. The violation of this duty by the deceased in the case at bar was the proximate cause of his death and hence there can be no recovery.

4. MINES AND MINERALS—*Negligence—Violation of Statute.*—The violation of a statute enacted for the protection of miners, resulting proximately in the death of a miner, is negligence *per se* and bars a recovery by his personal representative.

5. MINES AND MINERALS—*Act of 1912—Assumption of Risk.*— Whether or not the miner's act of 1912 abolishes the doctrine of assumed risk need not be decided in the case at bar, as the plaintiff's intestate was guilty of contributory negligence *per se* which was the proximate cause of his death.

6. DEMURRER TO EVIDENCE—*Grounds—Particularity Required.*—The chief object of requiring the grounds of a demurrer to the evidence to be stated is to prevent the demurree from being taken by surprise. The statement should be sufficient to put the plaintiff completely upon notice of all the points relied on, but it is not necessary to give a discussion of the evidence and specific reasons for each ground relied on. This is not in conformity with our practice, and neither the letter nor the spirit of the statute demands it.

Error to a judgment of the Circuit Court of Wise county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*F. A. Groseclose, D. D. Hull, Jr., Bullitt & Chalkley* and *Jackson & Henson,* for the plaintiff in error.

*William H. Werth* and *E. M. Fulton,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This suit was brought by the administrator of the estate of Smythe J. Asbury, deceased, against the Virginia Iron, Coal and Coke Company to recover damages for injuries

alleged to have been sustained by the plaintiff's intestate as a result of the negligence of the defendant company. There was a demurrer to the evidence, which was overruled by the circuit court and judgment given for the plaintiff for $6,000, the damages ascertained by the verdict of the jury. This judgment is now before us for review.

The declaration contains two counts, and seeks a recovery upon the grounds (1) that the mine foreman did not furnish the plaintiff's intestate with a sufficient number of props to sustain the roof of the mine where he was working, and (2) that the props furnished were inadequate in size, strength and dimensions to make the roof over the place where the decedent was working reasonably safe from the fall of heavy slate.

The deceased was an old miner of long experience who contracted to remove the pillars of coal from certain rooms of the mine after the main body of the coal had been removed. This was known to be a more dangerous operation than the usual removal of coal when the pillars were left standing. This kind of work was more profitable than the ordinary, the operator being paid by the carload for all the coal thus removed from the mine, he paying his own employees such amount as was agreed upon between them. At the time of the accident which resulted in his death Asbury was working on pillar No. 7. The evidence shows that the mine around the place where he was working had been on what is known among miners as a "squeeze" which was a condition expected when the pillars of coal were being dug out. Some time before Asbury was injured he had been removing pillars Nos. 8 and 9, but the danger became so great with these pillars that the mine boss directed him to "pull his work back to 6 and 7." This was some eight or ten days before the accident. He had not worked on No. 7 more than two or three days before he was killed by the falling of a large piece of slate, about fif-

teen feet in length, eleven feet in width and about three feet thick, known in the language of the mine as a "horse-back." It is clear from the evidence that on the morning of the day the accident happened, the place where the deceased was working was in an obviously dangerous condition. There was a slip on the edge of the "horseback" that was apparent to anyone; the roof was sounded and found not to be solid, and there was but one prop under the enormous body of slate which fell, and this prop was not under the center of the "horseback" but toward one end of it. This condition was seen by others and it cannot be doubted that it was known to, or in the exercise of reasonable care should have been known to, this experienced miner who had better opportunity to see the peril of the situation than anyone else.

In *Russell Creek Coal Company* v. *Wells*, 96 Va. 416, 423, 31 S. E. 614, 615, a mining case, where slate fell from the roof causing the injury there complained of, this court said: "It is the duty of the servant to exercise care to avoid injuries to himself. He is under as great obligation to provide for his own safety from such dangers as are known to him, or are discernible by ordinary care on his part, as the master is to provide for him. He must take ordinary care to learn the dangers which are likely to beset him in the service. He must not go blindly to his work where there is danger. He must inform himself. This is the law everywhere." And it may be added that it is still the law. *Bowles* v. *Soapstone Co.*, 115 Va. 701, 80 S. E. 797.

The conclusion cannot be escaped in the present case that the plaintiff's intestate lost his life in consequence of his negligent failure to perform the reasonable duty imposed upon him, for his own protection, by the rule to which we have adverted. The contention, however, of the plaintiff is that the law has been changed, and that such cases are now governed by and are to be decided in accordance with

the provisions of the recent mining statute. Acts 1912, p. 419. The contention is that the defendant company did not furnish sufficient props, or props of the requisite size, to support the roof of the mine and that under section thirteen of the statute this was negligence for which it is liable.

So far as necessary to be quoted, the language of the section relied on is that the mine foreman mentioned therein shall, among other duties, "see that sufficient props, caps and timbers, as nearly as possible of suitable dimensions, are furnished for the places where they are to be used, and such props, caps and timbers shall be delivered and placed at such points as the rule for the government of each respective mine provides for them to be delivered; and every workman in want of props, cap pieces and timbers shall notify the mine foreman, or such other person who may be designated for that purpose, at least one day in advance, giving the length and number of props, or timbers and cap pieces he requires, but in case of an emergency the timbers may be ordered immediately upon the discovery of any danger, and it shall be the duty of each miner to properly prop and secure his place in order to make the same secure for him to work therein, and no miner shall work in any working places unless he has props and timbers sufficient to make his place secure."

In this connection section twenty-nine of the mining act is also invoked by the plaintiff. This section provides, "that nothing in this act shall be so construed as to relieve the mine owner or operator from seeing that all of the provisions of this act are complied with, nor from the duty imposed at common law to secure the reasonable safety of their employees, and, in the performance of those duties that are nonassignable at common law, as well as those duties required by this act, the mine foreman, boss or fire

boss, and their assistants shall be considered as acting for the mine owner or operator as a vice principal."

It is clear that the general purpose of this mining act was to promote the safety of miners. It is quite plain that it was not intended to relieve the employees in mining operations from exercising that degree of care and diligence for their own safety which the law required prior to the enactment, for the statute is mandatory that "it shall be the duty of each miner to properly prop and secure his place in order to make the same secure for him to work therein, and no miner shall work in any working places unless he has props and timbers sufficient to make his place secure." Thus it seems that the legislature had in mind the view that one of the most efficient means of securing the safety of the miner was to *require* that he should not work in any place unless he had sufficient props and timbers to make such place secure. "Every workman in want of props" etc., taken in connection with the provision that, "it shall be the duty of each miner to properly prop and secure his place in order to make the same secure," clearly imposes upon the miner the duty of watchful inspection in order that he may discover when props are needed, then to order them and when furnished to place them properly so as to make his place secure. After prescribing these duties, the statute enjoins upon the miner the duty of staying out of his working place until sufficient timbers have been furnished to make the same secure. Both the common law and the statute make it the duty of miners, engaged in the hazardous occupation of mining coal, to be watchful for the dangers likely to arise as a result of the ever-changing condition of the rooms and entries in which they are working.

The contention of the plaintiff is that the defendant did not, as required by the statute, furnish props to the deceased when ordered to do so, and that this negligence

was the cause of the injury complained of. It is, however, in our view of the case, unnecessary to consider or determine this controverted question, for if it be conceded that the defendant was negligent in the respect mentioned, it could not avail the plaintiff for the reason that his intestate was clearly guilty of contributory negligence in not leaving the place where he was working until sufficient props arrived to make the place secure. This negligence on the part of the deceased was the proximate cause of his death. The purpose of the statute was to prevent the miner from subjecting himself to unnecessary risk. It does not permit him to stay in his working place until the danger is so great and immediate that no person of ordinary prudence would remain, but the duty is enjoined upon him to leave as soon as his place becomes insecure from lack of props. The violation of this statutory duty by the deceased, under the circumstances of this case, precludes a recovery.

In Labatt on Master and Servant, vol. 2, sec. 651, it is said: "The doctrine established by the great weight of authority is that a servant who is seeking indemnity for injuries alleged to have resulted from a breach of a statutory duty or from the negligence of a statutory vice-principal cannot recover if the evidence shows that he was himself wanting in ordinary care, and that he contributed by his carelessness to the injuries complained of."

In *Southern Ry. Co.* v. *Rice's Admr.*, 115 Va. 235, 78 S. E. 592, citing many authorities in support of the conclusion, this court held that an engineman of a railway company could not recover damages from his employer for injuries suffered while running his engine within the limits of a city at a higher rate of speed than that fixed by the ordinance, if such negligence proximately contributed to the injury; and that it was immaterial that the company knew that the ordinance was regularly violated by its employees;

that the negligence in such case was negligence as matter of law, and it would be contrary to public policy to relieve the engineman of the effect of his violation of the law upon the ground that the company and its employees were in the habit of violating the particular law.

We have repeatedly held that the violation of a rule of the company, promulgated for the protection of the employee, defeated a recovery by the employee when the observance of the rule would have prevented the injury complained of. *Southern Ry. Co.* v. *Johnson,* 111 Va. 499, 69 S. E. 323, Ann. Cas. 1912 A, 81; *Washington Southern Ry. Co.* v. *Grove,* 113 Va. 411, 74 S. E. 148; *N & W. Ry. Co.* v. *Cofer,* 114 Va. 434, 76 S. E. 909. Obedience to the *rules* of an employer cannot be more obligatory upon an employee than his obedience to a statute enacted for his benefit; on the contrary, a violation of the latter would appear *a fortiori* to be negligence *per se.*

There has been much discussion by counsel of the question whether or not the doctrine of assumed risk applies in this case, counsel for the plaintiff contending that the mining act, under consideration, abolishes the doctrine of assumed risk where the defendant is shown to have violated any of its injunctions. It is not necessary to decide this question in the present case. Having held that the plaintiff was guilty of contributory negligence *per se,* which was the proximate cause of his death, it is wholly immaterial, so far as this case is concerned, whether the doctrine of assumed risk is abolished by the act or not.

A further objection urged on behalf of the plaintiff is that the demurrer to the evidence is not sufficiently specific. The grounds of demurrer to the evidence stated by the defendant were: (1) "The evidence does not show that the defendant was guilty of any negligence which was the proximate cause of the accident." (2) "The evidence shows that the decedent of the plaintiff, Smythe Asbury,

was guilty of negligence which contributed to the accident complained of." (3) "The evidence shows that the decedent of the plaintiff, Smythe Asbury, knew of the danger and assumed the risk." (4) "The evidence shows that the danger was open and obvious and such as ought to have been known to a man of ordinary understanding, and especially to a man of the experience in coal mining which Smythe Asbury had had, and that if he did not know of the danger he ought to have known thereof." (5) "The evidence shows that the plaintiff's decedent, Smythe Asbury, violated the law of the State of Virginia in not staying out of the place where he was killed until he got sufficient props to make the place safe and violated the law in undertaking to work in the said place before he had made the same safe."

We are of opinion that these grounds fully meet the purpose of the statute in requiring the causes of the demurrer to the evidence to be stated; the chief object being to prevent the demurree from being taken by surprise. These assignments all go to the merits of the case and it is not perceived how greater elaboration could have more completely put the plaintiff upon notice as to all the points relied on. We are aware of no position since taken that was not clearly and fully pointed out in the grounds of demurrer as stated. The contention of the plaintiff would require in a statement of the grounds of demurrer a discussion of the evidence and specific reasons for each ground relied on. This is not in conformity with our practice, and neither the letter nor the spirit of the statute demands it.

For the reasons given, the judgment complained of must be reversed, and this court, taking such action as the circuit court should have taken, will sustain the demurrer to the evidence and give judgment in favor of the defendant company.

*Reversed.*