ERNEST R. MANLEY v. MINNEAPOLIS PAINT COMPANY.

May 5, 1899.

Nos. 11,435—(59).

**Master and Servant—Negligence of Master—Furnishing Instruction and Safe Place to Work.**

Upon the undisputed evidence in this case, *held*, that the defendant was not negligent in failing to furnish the plaintiff a safe place in which to work, or in failing to warn and instruct him as to the safe and proper way of executing the work.

**Policy of Indemnity Insurance and Defense by Insurer not Evidence of Admission of Negligence.**

The fact that the master holds an indemnity policy insuring him against liability on account of injuries to his employees by his negligence, and requiring the company to defend an action against him on account of such injuries, and it does so, is not evidence tending to show an admission of negligence on the part of the insured or insurer.

Action in the district court for Hennepin county to recover $1,500 damages for personal injuries. The court, Elliott, J., direct-

ed a verdict in favor of defendant; and from an order denying a motion for a new trial, plaintiff appealed.    Affirmed.

*Geo. D. Emery*, for appellant.

*Keith, Evans, Thompson & Fairchild* and *Davis, Kellogg & Severance,* for respondent.

START, C. J.

Action for personal injuries.  The trial court, at the close of the evidence, instructed the jury to return a verdict for the defendant. The plaintiff appealed from an order denying his motion for a new trial.

The evidence tended to establish the following facts:  The plaintiff is a son of the president and general manager of the defendant. He is a man of at least average capacity and education, and was 24 years old at the time he was injured.  He was employed in the paint factory of the defendant as packing and shipping clerk.  His duties were to pack goods and check them in and out of the warehouse, and do such other work as he might be directed by the foreman.  On July 27, 1897, he was directed by the foreman to assist in unloading ocher in barrels from a car which was standing upon the track against the end of a platform, which was eight feet wide and four feet high.  One side of this platform abutted against the factory.  The other side was open and unguarded.  A skid eighteen inches long and two feet wide, with a fall of ten inches, extended from the car to the platform, down which the barrels slid or were rolled to the platform; thence along it to the warehouse.  The foreman was inside the car, and had rolled a barrel out to the edge of the skid, and called upon the plaintiff to help steady it down.  The plaintiff then stepped to the barrel, and put his hands on the top and sides of it to ease it down.  The barrel came down faster than he anticipated, and, to save himself from injury by the barrel running onto him, he stepped aside, but too far, and fell off the platform on the unguarded side, and was injured.

The plaintiff then knew and understood the condition of the platform and the appliances of the factory and the general method of conducting business thereat, but he did not know that it required any particular skill to handle the barrels at the place in

question. The usual and safest way of handling heavy barrels upon an inclined skid is to seize the barrel at its ends by the chimb, at the same time placing the knee against it, but an ordinary person can handle it by placing his hand on top of it to prevent its coming down too fast. The plaintiff was ignorant of the usual way of handling such barrels, and he was not informed thereof by the foreman or any one else. The accident happened in the daytime. The barrel was 30 inches long, $23\frac{1}{2}$ inches in diameter at the largest part, and weighed 400 pounds. The foreman who was called by the plaintiff, and whose testimony is uncontradicted, testified as to how the accident happened as follows:

"Q. Did you see him with his hands on top of the barrel, in that way? A. Yes, sir. Q. Say anything more to him? A. No, sir; I did not. Q. What did you do then,—let the barrel go? A. Yes, sir. Q. What was the result? A. Well, it went down the skid, and he hung on to the barrel a little bit, and then stepped off to one side, and let the barrel go. Q. How fast was the barrel going when he stepped to one side? A. Oh, not very fast. Well, it couldn't go very fast. It hadn't far to go. It only went about six feet in all, I think. Q. Was it under pretty good headway before he let go of it? A. I think not; I think it was only part way down the skid when he let go of it."

The plaintiff claims that the defendant was negligent in failing to provide a safe and suitable place and appliances for the work, and in failing to warn and instruct him in the proper manner of handling the barrels. The trial court correctly directed a verdict for the defendant. For aught that appears from the record, the place and appliances of the work were the usual ones for work of the kind the plaintiff was called upon to assist in performing. Were it otherwise, the danger, if any, in the execution of the work was so plain and patent that it must be held, as a matter of law, that the plaintiff assumed the risks, if any there were. For the same reason, there was no apparent necessity for defendant, by its foreman or otherwise, to instruct the plaintiff as to the best way of steadying the barrel as it came down an inclined plane of only 18 inches. A careful and cautious foreman could not reasonably anticipate that a full-grown man 24 years old, and of ordinary discernment and gumption, would require instructions as to the man-

ner of doing the plain and ordinary work which the plaintiff was called upon to perform. Unless it affirmatively appears that the master knew, or ought to know, that an employee, on account of immature age or some incapacity, cannot reasonably be expected to possess ordinary common sense and judgment, it must be presumed that he does possess them. Walsh v. St. Paul & D. R. Co., 27 Minn. 367, 8 N. W. 145.

The foreman in this case, although the plaintiff testified that he did not know what the danger was, had a right to assume that he had sufficient capacity and experience safely to discharge the duty assigned him, and was not negligent in failing to instruct him, even if it be conceded that the foreman was a vice principal,—a question we do not decide. Ordinarily, the question whether the master is negligent in failing to instruct his employee as to the dangers incident to the employment is one of fact for the jury, but in this case there is no reasonable chance of drawing different conclusions from the undisputed evidence; hence it is a question of law.

Evidence was received without objection on the trial to the effect that the defendant was insured against loss from liability for damages on account of bodily injuries suffered by its employees caused by its negligence, and that the insurance company, at the request of the defendant, was defending this case. The plaintiff claims that this is an admission of negligence in the premises on the part of the defendant and the insurance company, which should have been submitted to the jury. The case of Barg v. Bousfield, 65 Minn. 355, 68 N. W. 45, relied on in support of the claim, is not in point; for the indemnity policy in the case cited was received in evidence as having a bearing on the question whether the person who executed the work, in the doing of which plaintiff was injured, was an independent contractor. The fact that the master holds such an indemnity policy, and requires the insurance company to defend an action against him by an employee for injuries caused by his alleged negligence, and that the company does defend, is not admissible, as tending to show an admission of negligence on his part or of the company defending.

Order affirmed.