𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

HONAKER LUMBER COMPANY, INC., v. CALL.

March 16, 1916. *

1. APPEAL AND ERROR—*Instructions as Shown in Bill of Exception—Amendments—Statements in Record.*—Where objection is made to an instruction as modified by the court, and exception is duly taken to the action of the court in giving it, this court must deal with the instruction as it appears in the bill of exception, disregarding any "verbal amendment" made by the court, especially when made in the absence of the jury; and the fact that the court certifies that no amendment "verbal or otherwise" to the instruction was made or asked, does not deprive the party excepting of the right to complain here of the error in the instruction as it appears in the record.

2. INSTRUCTIONS—*Excluding Evidence from Consideration of Jury—Argument.*—The fact that defendant's counsel were permitted to argue before the jury that the plaintiff could not recover if he *knew* a given fact, does not cure the vice of an instruction which excludes from the consideration of the jury whether or not he *ought to have known* such fact. If knowledge would bar recovery by the plaintiff, and the evidence is such that the jury might reasonably believe that he ought to have known, and that he was guilty of contributory negligence in not remembering, an instruction which takes away from the jury the consideration of such evidence is erroneous.

3. MASTER AND SERVANT—*Duty of Servant to Care for Himself—Known or Discoverable Dangers.*—A servant is under as great obligation to care and provide for his own safety from such dangers as are known to him, or are discoverable by ordinary care on his part, as the master is to provide for him, and the negligence of the master does not excuse the servant for the failure to exercise such care, if such failure was the cause of the injury complained of. Negligent ignorance is the equivalent of knowledge.

4. APPEAL AND ERROR—*Petition—Particularity Required—Case at Bar.*—A statement in a petition for a writ of error, relating to fourteen alleged errors, that the petitioner "is advised that errors were committed to its prejudice by said rulings of said court" is not a compliance with the rule that a petition for a writ of error, being in the nature of a pleading, must state clearly and distinctly the errors relied on to reverse the judgment.

* Rehearing June 27, 1916.

Error to a judgment of the Circuit Court of Russell county, in an action of trespass on the case.   Judgment for the plaintiff.   Defendant assigns error.

*Reversed.*

The instructions given by the court, and referred to in the opinion, are as follows:

Instructions given by the court of its own motion.

No. 1.   The court instructs the jury that if they believe from a preponderance of the evidence that the defendant company knew that the car, from which the plaintiff jumped when he received his injury, was defective and unsafe, that it was loaded by said company with freight billed to points along its line of road, and was taken out by said plaintiff, and that he did not know, or by the exercise of ordinary care and observation could not have known, that said car was defective or unsafe, and that said car by reason of its defective and unsafe condition, whilst being pushed in front of two other cars, was partially derailed or wrecked, and the plaintiff, without fault or negligence on his part, reasonably believed said car was at the time in danger of rolling down an embankment and that he was in a position of imminent peril and jumped from said car to prevent injury to himself, and thereby received the injury complained of, then the jury will find for the plaintiff—unless the jury shall believe from the evidence that it was not proper and was more dangerous to ride on said front car than either of the two rear cars and that the said plaintiff knew, or by the exercise of ordinary care and observation should have known, that it was not proper and was more dangerous to ride on the front car than either of the other two cars.

No. 2.   The court tells the jury that the burden of proof is upon the plaintiff in this case to prove, by a preponderance of the evidence, that the defendant was guilty of negligence, as stated in the declaration, and that this negligence was the proximate cause of the injury; that without negligence on its part the defendant cannot be held liable, and even if the jury shall believe from the evidence that the defendant has been negligent, if they further believe from the evidence that the plaintiff was also negligent, and that his carelessness or negligence contributed to his injury, he cannot recover against the defendant.

No. 3.   The court tells the jury that the defendant did not insure or guarantee the plaintiff's safety.   Its only duty was to exercise ordinary care for his safety. Ordinary care depends upon the circumstances of the particular case, and is such care as a person of ordinary prudence, under all the circumstances, would exercise, and if the defendant used such ordinary care, it is not liable in case of injury.

On the other hand, plaintiff's duty was to use ordinary care for his own safety—that is, such care as a man of ordinary prudence, under all the circumstances, would exercise.   And the plaintiff cannot recover, regardless of any failure of the defendant to use ordinary care (if the jury believe such failure on the part of the defendant appears from the evidence), if the jury believe from all the evidence that the plaintiff also failed to use ordinary care and that his own imprudence contributed to the injury.

No. 4.   The court instructs the jury that if the defendant relies on the defense that the plaintiff would not have been injured but for his own contributory negligence, then the burden is upon the defendant to establish such contributory negligence, by a prepon-

derance of the evidence, unless such contributory negligence appears from the plaintiff's evidence, or can be fairly inferred from all the facts and circumstances in the case.

No. 5.    The court further instructs you that the burden of proving contributory negligence on the part of the plaintiff, and that such negligence contributed to his injury, rests upon the defendant in this case, unless both these facts appear to the jury from the plaintiff's own evidence, or can be fairly inferred from all the evidence in the case.

The court further tells you, in this connection, that where one is suddenly and unexpectedly placed in a situation of imminent peril of bodily harm by the negligence of another and without his fault, he is not required to exercise that degree of ordinary care, or sound judgment or discretion, which would be required of him under ordinary circumstances and normal conditions.

The plaintiff requested the court to give the following instruction No. 6.    The court refused to give it as offered, but modified and gave it:

No. 6 (as offered).    The court instructs the jury that if they believe from the evidence that defendant knew that the car in question was in a dangerous condition before or after it was left at Store No. 1, then it was the duty of the defendant, and not of the plaintiff, to exercise due care to prevent said car being loaded and billed out over its roads from Store No. 1; and further, that plaintiff has the right to presume, in the absence of knowledge or notice to the contrary, that defendant would and had performed this duty, and there was no obligation upon the plaintiff to see to the performance of defendant's duties in this regard.

But the court refused to give the instruction No. 6 as offered and modified said instruction and gave it as modified, over defendant's objection, which instruction as modified and given by the court is in the following words and figures, viz.:

No. 6 (as modified and given).    The court instructs the jury that if they believe from the evidence that defendant knew that the car in question was in a dangerous condition before or after it was left at Store No. 1, then it was the duty of the defendant, and not of the plaintiff, to exercise due care to prevent said car being loaded and billed out over its road from Store No. 1; and further, that plaintiff has the right to presume, in the absence of knowledge or notice to the contrary, that defendant would and had performed this duty, and there was no obligation upon the plaintiff to see to the performance of defendant's duties in this regard.    But if the jury shall believe from the evidence that the plaintiff had received notice and written instructions as to shifting said car and that said car was unsafe and not to remove it across the mountain because the same was unsafe, that the plaintiff shifted the car as directed, but afterward took said car without an order or direction from the company so to do, and without ascertaining whether or not it had been repaired, and was injured by reason of a wreck caused by the defective or unsafe condition of said car, then the plaintiff cannot recover.

The court modified the defendant's instruction No. 3, and gave it as modified over the objection of the defendant to the modification.    The modification of this instruction is shown in italics in the instruction as given by the court.

No. 3.    The court instructs the jury that where there are two methods of performing a duty by an

employee, one of which is less dangerous than the other, he owes a positive duty to his employer to perform said duty in the less dangerous method. So that if the jury believes from the evidence that the plaintiff could have performed his duties as conductor of the train in which it is alleged there was a defective car, which caused the injury complained of, by riding upon the middle car or car next to the engine, and that it was less dangerous to ride upon said middle car or the car next to the engine than upon the front car, which was fartherest from the engine, *and plaintiff knew, or should have known, with oridnary care and observation in the discharge of his duties that it was less dangerous*, and that said plaintiff rode upon the front car and was thereby injured, he cannot recover.

Defendant's instruction No. 5, which was refused, appears in the opinion.

*Charles M. Broun, Burns & Kelly* and *Greever & Gillespie*, for the plaintiff in error.

*William H. Werth*, for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is an action by defendant in error to recover damages of the plaintiff in error for personal injuries charged to have been occasioned him by said company's negligence, and to a judgment for the plaintiff for $8,285 this writ of error was allowed by a judge of this court.

The parties will be styled in this opinion as they were in the court below, plaintiff and defendant.

There was a demurrer to the declaration, and to each of the two counts it contained, which demurrer

the court overruled, and this ruling is assigned as error in the petition to this court, but was not argued either in the petition or the oral argument here, and upon our reading of the declaration we are of opinion that the demurrer thereto was rightly overruled.

Viewed from the standpoint of a demurrer to the evidence by the defendant, the facts in the case are these: Defendant owns and operates a lumber plant, situated at Putnam, in Russell county, Va., where it saws and manufactures logs into different grades of lumber, and, in connection with its plant, and as a part thereof, owns and operates by steam a railroad, extending from Putnam, at which point it connects with a line of the Norfolk and Western Railway Company, up Lewis creek and across the mountain into Buchanan county, upon which it conveys, almost exclusively, logs from the forest to its mill at Putnam, and this is the purpose and only purpose for which it was built; but, as the road extends into a sparsely settled and inaccessible section of Buchanan county, defendant was frequently met with requests from the people of that section to haul different articles of merchandise and freight up and down said creek and across the mountain, to and from the N. & W. Railway at Putnam, and defendant, realizing the convenience to them, frequently did such hauling, together with merchandise and supplies necessary for its own operations, in the box cars of the N. & W. Ry. Co. Defendant's road is not a common carrier, never having been chartered as such, and is not so operated. It has no schedules, freight rates or proper equipment for such work, and does not haul all things for all people at all times, when requested, but only such things at such times as the proper conduct of its own business, with its equipment, will permit, and charges

only small amounts for the actual trouble and expense incident thereto.   Defendant has a depot at the junction of its road with the Norfolk and Western at Putnam, at which all of its freight, and the freight for other parties shipped in its cars to Putnam is delivered; and a general merchandise store near its mill at Putnam, and two other stores, or commissaries, along the line of its road, to provide supplies for its woodsmen and other employees, and any other parties who may desire to trade at them.   After receiving the freight at its depot at Putnam in the Norfolk and Western cars, or cars delivered by the Norfolk and Western road, the freight in them is rebilled to different points along defendant's road at which it is to be delivered, and the bills for the freight, and shipping directions for the car containing the freight, called a "shifting list," are placed in the "bill box" in the machine shop, where the conductor who takes out the cars gets them. Frequently Store No. 1, which is the first store on the route after leaving the depot, has merchandise for Store No. 2 or Store No. 3, or other points on the route, and when a car is stopped at Store No. 1, or at any other place, which has freight for any other point on the line, it is loaded into the car and the conductor given a bill for it by the storeman, showing at what point it is to be delivered.   The plaintiff, D. W. Call, at the time of the accident he complains of in this suit, was the conductor and the only conductor who handled this freight or these box cars carried out on the line of the defendant's railroad.   Other conductors in defendant's employ hauled logs and log cars, but no one handled freight or box cars on the road, in any way, except Conductor Call, the plaintiff.

On Saturday, November 2, 1912, very early in the morning, a Norfolk and Western crew placed a box

car, St. L. & S. F. No. 124,206, containing freight for the defendant and for other parties consigned in care of the defendant, on the siding at defendant's depot at Putnam, and in placing this car on the siding it became derailed. At the time of the derailment defendant's depot agent at Putnam, R. H. Honaker, was present, and saw the derailment, and thereupon the car was run back on the rails in a very few minutes by the Norfolk and Western crew, and Honaker looked at the car and saw that its side bearings were down, so that the car would not "slew" properly, and that in this condition it could not be safely taken across the mountain, and for this reason he took out of the car all freight for all points beyond Store No. 1, which was the larger part, leaving in the car only the articles for the machine shop and Store No. 1, the machine shop being between the depot and Store No. 1, and some time Saturday afternoon made off a "shifting list" or "shifting bill" for the car, and placed same in the "bill box" provided for that purpose in the machine shop, and there was written on this shifting bill, "Take St. L. & S. F. car No. 124,205 from freight station and unload at machine shop," certain named articles, "and then place car at Store No. 1, but do not take car over the mountain as it is unsafe." The plaintiff, in the regular course of his business as conductor, took the car from the freight station Monday morning to the machine shop and unloaded the articles specified on the shifting bill to be left there, then placed the car at Store No. 1, just as he was directed to do by the instructions written on the shifting bill. After the car was left at Store No. 1 on Monday, the remainder of the goods in it were unloaded, and the car being there, the storeman at Store No. 1, having some goods for Store No. 3, placed same in the car, and, presum-

ably, Monday afternoon or Tuesday morning, gave a
bill therefor to the plaintiff, who took this car, to-
gether with two other box cars for which he had orders,
Tuesday morning across the mountain, or rather to a
point on the mountain where the car in question,
which was the front car in the train made up by
plaintiff and being backed by an engine up the moun-
tain, and which the plaintiff had been notified in the
manner stated was unsafe, became derailed and he
was injured.

While defendant's railroad is only a logging road,
it is of standard gauge, and the condition of the road-
bed is not complained of. Its curves, as is usual in
roads of like kind, are more abrupt and the grade
across the mountain heavier than is ordinarily found
on public service roads, all of which conditions were
well known to the plaintiff, as he had frequently made
trips across the mountain as conductor of defendant's
trains similar to the one that he was running on the
occasion of the accident to him. It was, it appears,
customary and safer in going up the mountain with
such a train to place the engine behind and push the
cars in front, because of the danger of the cars breaking
loose, or becoming uncoupled in some way and run-
ning back down the mountain; and in pushing the
cars in front up the mountain it is a great deal more
dangerous for the conductor of the train, brakeman, or
anyone else, to ride upon the front car than either of
the others, as it is much more liable, for any cause,
to derail, and if it does derail is much more liable to
go over the embankment, as it is coupled to nothing
in front to hold it, which facts are testified to by
every witness who was introduced in this case by
either the plaintiff or the defendant. Not only so,
but every trainman acquainted with the operation

of the trains on defendant's road, or any road of like kind, introduced stated that the usual, customary and proper place for the conductor or brakeman to ride in pushing cars under such circumstances, was on some car back of the front car, and not on the front car. The plaintiff, notwithstanding these undisputed facts, in taking this "unsafe" car from Store No. 1 across the mountain, placed it in front, with the engine pushing in the rear of the three cars, and then got on top of it to ride, and rode there until he reached a point on the mountain where it became derailed while the train was moving about three or four miles per hour around a curve; and where it derailed, although the train was stopped immediately, in the space of four or five feet, he jumped over on an adjacent bank and in some unexpected and unusual way broke his leg.

The first question presented upon the exceptions taken to the rulings of the trial court is whether or not the case, upon the facts which the evidence tended to prove, was fairly submitted to the jury. It is claimed by the defendant that several instructions given by the court for the plaintiff contained not only erroneous propositions of law, but were greatly prejudicial to the defendant, and that the court erred in refusing certain instructions which the defendant asked. These instructions will be considered in the order argued in the petition for this writ of error, and the first of them is instruction No. 6, given for the plaintiff over the objection of the defendant, with a modification by the court.

This instruction, given as modified by the court, (the modification italicized) is as follows: "The court instructs the jury that if they believe from the evidence that defendant knew that the car in question was in a dangerous condition before and after it was

left at Store No. 1, then it was the duty of the defendant, and not of the plaintiff, to exercise due care to prevent said car being loaded and billed out over its roads from Store No. 1; and further, that plaintiff has the right to presume, in the absence of knowledge or notice to the contrary, that defendant would and had performed this duty, and there was no obligation upon the plaintiff to see to the performance of the defendant's duties in this regard. *But if the jury shall believe from the evidence that the plaintiff had received notice and written instructions as to shifting said car, and that said car was unsafe and not to remove it across the mountain because the same was unsafe, that the plaintiff shifted the car as directed, but afterwards took said car without an order or direction from the company so to do, and without ascertaining whether or not it had been repaired, and was injured by reason of a wreck caused by the defective or unsafe condition of said car, then the plaintiff cannot recover.*"

The latter part of the instruction, which is italicized, was intended doubtless as a modification of the first part, but it does not by any means relieve the instruction of the objections to it pointed out by counsel for the defendant. On the contrary, if it be conceded for the sake of argument, that the first part of the instruction is free from objection, the latter part of it is not only confusing and misleading, but is clearly erroneous, as it in substance told the jury that if the plaintiff had received notice that the car was unsafe and directions not to take it across the mountain, *and took it without an order or direction from the defendant company so to do,* the plaintiff could not recover; that is to say, to prevent the plaintiff from recovering it was not sufficient that he had received notice of the unsafe condition of the car and instructions from Honaker not

to take it across the mountain, but, in addition to this, he had to take it without an order or direction so to do. Under the instruction, and doubtless the jury so construed it, as it admits of that construction only, they might have believed that the plaintiff received notice from Honaker, defendant's depot agent, upon whom devolved alone the duty of directing what cars were to be taken from the yard at Putnam across the mountain, as was known to the plaintiff, still if he took the car in question upon an order or instructions from the defendant company, plainly meaning that if the manager of defendant's Store No. 1 gave him bills for merchandise placed in the car, he could recover.

As observed, the plaintiff, at the time of the accident to him of which he complains, was the conductor, and the only conductor, in the employ of the defendant who hauled this freight or the box cars carried out on the line of the defendant's railroad, and there was evidence in the case, practically not controverted, tending to prove, not only that the plaintiff had no order or instructions from Honaker to take the car in question from Store No. 1 and carry it across the mountain, but that no one else was authorized to give him such an order or instruction, and that plaintiff well knew this fact.

It is argued for the plaintiff that to meet the objection made to this instruction No. 6 as originally asked, the court added the second proposition contained in the italicized paragraph; but, be that as it may, the record shows that objection was made on behalf of the defendant to the instruction as modified and exception was taken to the action of the court in giving it, so that we have to deal only with the instruction as it appears in the bill of exceptions, disregarding any "verbal amendment" made by the court

to the instruction, especially when made in the absence
of the jury; and the fact that the court certifies that
no amendment, "written or otherwise," to the instruc-
tion was made or asked, does not deprive the defend-
ant of the right to complain here of the error in the
instruction.   Nor does the fact that the court certifies
that counsel for the defendant were permitted to argue
before the jury that "the plaintiff could not recover if
he knew that the car was defective when he hauled
it," remove the error in the instruction prejudicial to
the defendant, for the obvious reason that it excluded
from the consideration of the jury whether or not he
ought to have known at the time he hauled the car
that it was defective, by reason of having received the
notice of its unsafe condition before that time.   It is
not denied that the plaintiff followed all of the in-
structions written on the bill by Honaker and left in
the "bill box" for him, with respect to the disposition
to be made of this unsafe car; except the instruction
not to take it across the mountain, and the plaintiff
does not deny having received these instructions, but
contents himself with answering evasively all ques-
tions asked him about them and attempts to justify
himself for so answering by replying, "I don't recol-
lect," or "I don't have any recollection as to what car
I handled or what freight I hauled"—that is, he had
no recollection, whatever, of moving the car on Mon-
day, and none as to where he got the car Tuesday
morning of the day the accident happened to him, and
he could not say whether he got it at the station, at
some place on the yard, or at Store No. 1.   Nor
could he recollect having any "shifting list" for this
car either Saturday or Monday, or any other time,
although he does not deny that he followed literally
the written instructions which Honaker placed in the

"bill box," so far as they directed him to take the car to the machine shop and unload the goods in it designated for that place, and then take the car to Store No. 1 and leave it there. From these facts the jury might reasonably have believed that the plaintiff knew or ought to have known that the car was defective when he moved it from Store No. 1, and was guilty of negligence in not remembering that fact, and, therefore, was not entitled to recover damages of the defendant for the resulting injury to him, although he may not have actually known it "at the time he hauled it." If the jury believed that knowledge of the defective condition of the car was brought home to him by the order given by Honaker and left in the "bill box," they might further have reasonably believed that he was negligent in the attention he gave to it, although they further believed that at the time he took the car he did not have in mind that it was in a defective and unsafe condition. Whether the plaintiff failed to exercise ordinary care for his own safety in not remembering Honaker's notice to him that the car was unsafe and not to take it across the mountain, and was, therefore, guilty of contributory negligence in not remembering it, were questions which should have been left to the jury, but were by the instruction we are considering erroneously excluded from their consideration, thus leaving the jury with no alternative but to find for the plaintiff if he in fact had received from the manager of Store No. 1 bills for the merchandise which he put in the car, and that too notwithstanding this store manager, called and examined by both plaintiff and defendant as a witness in the case, testified that he had no authority to direct the plaintiff to take it over the mountain "over Mr. Honaker's instructions what to do with the car;" and

also other evidence tending to prove that the plaintiff knew that fact and no evidence to the contrary.

No other conclusion could have been drawn by the jury from the instruction than that the plaintiff was entitled to recover although he might have known of the defect in the car, and had instructions from Honaker not to take it, provided he took it by reason of the manager of Store No. 1 giving him a bill for goods in the car destined to other points on the defendant's railroad, which the plaintiff considered sufficient authority for his taking the car.

Other instructions given at the request of the plaintiff, or of the court's own motion, are complained of by the defendant, but with respect to these instructions, which appear in the report of the case, we deem it only necessary to say that upon an examination of them in connection with the facts which the evidence in the case tended to prove, we do not think they or either of them contains error prejudicial to the defendant.

The refusal of the court to give instructions Nos. 2, 4, and 5, asked for by the defendant, and the modification of its instruction No. 3, as asked, is assigned as error. While it is said in the petition for this writ of error that the court erred in refusing defendant's instructions Nos. 2 and 4 and in modifying and giving, as modified, instruction No. 3, no error is pointed out as to either ruling, and, therefore, we do not consider it necessary to consider them further, except to say that the modification of instruction No. 3, complained of, and which appears in italics in the report of the instruction, was entirely right and proper in view of all the facts which the evidence in the case tended to prove, and was also consistent with the proposition of law propounded in the instruction

as asked.    We are of opinion, however, that the court did err to the prejudice of the defendant in refusing its instruction No. 5, which is as follows:

"The court instructs the jury that if they believe from the evidence that R. H. Honaker placed in the bill box in the machine shop of defendant company for the plaintiff, D. W. Call, written instructions for the shifting of the box car which is alleged to have caused the injury complained of, and that there was written upon said instructions that said car was to be left at said Store No. 1 and not taken across the mountain because said car was unsafe, they shall find for the defendant, although they further believe that plaintiff for any reason failed to get said instructions, or having gotten them, failed for any reason to observe that part of said instructions."

With respect to the written instructions left in the "bill box," the usual and proper place for the paper to be left, as is not controverted, it is urged on behalf of the plaintiff that "if plaintiff did get it he obeyed it and left the car where he was directed to leave it, and defendant afterwards loaded the car and directed him to haul it;" and further that "it is a self-evident fact that the warning in the 'bill box' had no tendency whatever to prevent the car being afterwards loaded and put in plaintiff's train precisely as was done." This contention leaves wholly out of view the fact that the plaintiff did not "obey" his instructions with respect to the car, but only to the extent of taking the car to Store No. 1 where he left it, and in disobedience of his written instructions (if any he had, which was a question for the jury), and in disregard of the warning that the car was unsafe, put it himself in the train at the place where he had left it, and undertook to carry it across the mountain.    Not only so, but the

evidence given by Honaker, the depot agent at Putnam's, shows that he, and he alone, had the right to give instructions for moving cars, a fact well known to the plaintiff, and plaintiff himself testified that he took the car and left it at Store No. 1, which was in accordance with the written directions given by Honaker; that there was no machine shop at the plant of the defendant but the machine shop was 500 or 600 feet, or about 175 yards, from Store No. 1, and that he was the only man who would have moved the car in question from Store No. 1 to the machine shop or any other point, and he admits that this car, when he got it Tuesday morning, was at Store No. 1 exactly where he left it the day before under his instructions from Honaker, left in the "bill box," and further admits that it was the duty of Honaker to give instructions as to the movement of cars, that is, make out a "shifting list" of cars to be moved, and that he, plaintiff, regularly got the shifting list out of the "bill box." He may have forgotten that Honaker notified him that the car in question was unsafe and not to take it across the mountain, but this would not relieve him of the imputation of negligence in putting the car in his train and attempting to haul it across the mountain, and whether he exercised ordinary care for his own safety in failing to remember the instructions given him not to take the car across the mountain and was guilty of negligence contributing to the injuries of which he complains were questions which the jury might and should have considered under defendant's instruction No. 5, *supra*, refused by the court. Especially should this instruction have been given in view of the fact that the court had on its own motion given instruction No. 1 (set out in the report of the case), which, when read in the light of the facts the

evidence tended to prove, told the jury that the plaintiff was entitled to recover if the car "was loaded by said company with freight billed to points along its line and was taken out by said plaintiff;" that is, if Spradlin, manager of store No. 1, put goods into the car for other points, plaintiff had a right to take the car, although he may have had no instructions to take it, but may have received positive instructions not to take it; and this contention, made in the argument of the case here for the plaintiff, was doubtless made before the jury, leaving wholly out of view the facts and circumstances adverted to in defendant's instruction No. 5 which was refused, and which facts and circumstances should have been considered by the jury along with all the evidence in the case upon which their finding was to be made.

The refusal of defendant's instruction No. 5 left the jury free, if not required, under the instructions given by the court, especially plaintiff's instruction No. 6 as modified, to find for the plaintiff, although they might have believed that plaintiff did get notice from Honaker that the car was unsafe, and instructions "not to take it across the mountain," but "failed to know at the time he handled the car," that is, had failed to remember the notice he had received of its defective and unsafe condition. Not only is it a rule of law too well settled to require citation of authority that a servant is under as great obligation to care and provide for his own safety from such dangers as are known to him, or are discoverable by ordinary care on his part, as the master is to provide for him, and the negligence of the master does not excuse the servant for the failure to exercise such care, if such failure was the cause of the injury complained of; but it is an established rule that "negligent ignorance is

the equivalent of knowledge." *Penn Foundry Co.* v. *Probst*, 114 Va. 264, 76 S. E. 323, 26 Cyc. 1142.

Assignment of error No. 4 does not demand our consideration. It relates to fourteen alleged errors contained in bills of exceptions Nos. 4 to 17, both inclusive, dealing with certain questions propounded to witnesses, which were objected to, but were allowed to be answered, and all that is said in support of the assignment of error is "that defendant is advised that errors were committed to its prejudice by said rulings of the court." Clearly this does not meet the requirement of the established rule that a petition for a writ of error, being in the nature of a pleading, must state clearly and distinctly the errors relied on to reverse the judgment. *Washington Southern Ry. Co.* v. *Cheshire*, 109 Va. 741, 65 S. E. 27, and authorities cited.

The last assignment of error relates to the refusal of the court to set aside the verdict of the jury as contrary to the law and the evidence. Since the judgment complained of has to be reversed for errors in granting and refusing instructions to the jury pointed out above, we deem it inexpedient or unnecessary to discuss further the evidence in the case.

The judgment of the circuit court is reversed, the verdict of the jury set aside, and the cause remanded for a new trial therein not in conflict with this opinion.

*Reversed.*