# Richmond.

## SWIFT AND COMPANY, INC., V. HATTON.

### January 16, 1919.

1. MASTER AND SERVANT—*Safe Place to Work—Non-Assignable Duty.*—The general rule is well settled that the master is under an absolute obligation—is charged with a non-assignable duty—to use due care in providing and maintaining a reasonably safe environment for his servants while engaged in their work.

2. MASTER AND SERVANT—*Safe Place to Work—Duty of Supervision by Master.*—Although the instrumentalities which are provided by the master are in themselves safe if properly placed and used, delinquencies of co-servants in the discharge of the duties entrusted to them may render the environment or place of work unsafe, and it is in such case a continuing non-assignable duty of the master to exercise reasonable care, by proper supervision and superintendence, to keep himself informed as to the manner in which the duties entrusted to them (the co-servants) are performed.

3. MASTER AND SERVANT—*Safe Place to Work—Duty of Supervision by Master—Limitations Upon Master's Duty.*—There are limits to the master's obligation of supervision and superintendence as stated in the preceding syllabus. For instance, he is not bound to supervise the merely executive details of the work to be done by his servants, during the very progress of the work. He is not bound to protect the servant from transitory perils due to no fault of plan or construction or lack of repair and to no permanent defect or want of safety in the defendant's works, or in the manner in which they had been ordinarily used. Nor from dangers caused by the frequent changes in the progress of the work. Nor from dangers due to the preparation or care of the instrumentality, where such preparation and care of the instrumentality are a part of the work which the injured servant or his co-employee undertook to do. Nor where the delinquent co-servant may have handled or placed a safe instrumentality so carelessly as to convert it, for the time being, into an injurious agency.

4. MASTER AND SERVANT—*Safe Place to Work—Duty of Supervision*

*by Master—Limitations Upon Master's Duty.*—There is a further limitation upon the non-assignable duty of the master of supervision and superintendence, and that is that such duty does not exist where the danger in question is known to the injured servant or is so open and obvious that he is presumed to have knowledge of it, under the settled rules of law on that subject, and is taken to have assumed the risk of such danger.

5.  Master and Servant—*Safe Place to Work—Duty of Supervision by Master—Limitations Upon Master's Duty—Assumption of Risk by Servant.*—When the danger is not known to the servant and is not open and obvious, the limitations mentioned in the third syllabus merely suspend the continuing duty of supervision and superintendence resting upon the master during such time as such an abnormal condition may be reasonably anticipated by the injured servant to exist without the knowledge of the master. During such time the injured servant assumes the risk of the result of the negligence of his co-servants in the discharge of their executive duties in the premises.

6.  Master and Servant—*Safe Place to Work—Duty of Supervision by Master—Limitations Upon Master's Duty—Assumption of Risk by Servant.*—The duty of the master to exercise supervision and superintendence over his servants cannot be permanently abrogated or discontinued by his entrusting executive details of the work to his servants. He owes a duty to his servants to exercise reasonable care to keep himself informed how the executive duties entrusted to them have been performed by their co-servants. Hence, if such an abnormal condition, which causes the injury to a servant, is not merely temporary, but has continued for such a length of time that the master has actual or constructive knowledge of it and he has, nevertheless, allowed it to remain in that condition without taking reasonable steps for the protection of his servants from the danger attendant upon such condition, he is liable. And this is true also in other cases, independently of the cause of the abnormal condition, as when it is the result of an act of a stranger, or of a fellow-servant who is not a vice-principal, or of the operation of extraordinary physical force, or to some circumstance which is left wholly unexplained.

7.  Master and Servant—*Inspection of Instrumentalities.*—The duty of inspection of a safe instrumentality, which is incumbent on a master, rests upon the same principles and exists under the same circumstances as does the duty of supervision and superintendence of the servant's place of work.

8.  Master and Servant—*Safe Place to Work—Open and Obvious Dangers—Case at Bar.*—In the instant case the injury to plaintiff was caused by a fall due to the overturning of a 350-

pound barrel of pork on the end of which the plaintiff stepped in the discharge of his duty as a salesman of the defendant in the usual and customary manner and in accordance with a long established arrangement of the goods of the latter in its storeroom and its established method of conducting its busi- . ness, while he was in search of cases of glycerine to fill an order for a customer. The barrel of pork in question was a perfectly safe instrumentality for the use to which it was put by the plaintiff, if the barrel had been placed in the usual and customary manner for the placement of such barrels in the storeroom; and the duty of putting it in its place in the first place, or of keeping it in position, did not rest upon the plaintiff. The question of fact as to whether the danger in question was open and obvious was submitted to the jury under proper instructions, and as there was ample evidence to sustain a finding of the jury that the danger was not open and obvious, that question was concluded in favor of the plaintiff by the verdict of the jury.

9. MASTER AND SERVANT—*Safe Place to Work—Open and Obvious Dangers—Case at Bar.*—In the case at bar there was ample evidence to sustain a finding of the jury that the dangerous condition of the barrel had existed for such a length of time that the master had constructive knowledge of it.

10. APPEAL AND ERROR—*Assignment of Error—Error Not Assigned or Raised in The Court Below.*—The question of whether a particular feature of an instruction is erroneous is not presented for decision to the appellate court, where no objection is made to the instruction on this ground by the assignments of error.

11. MASTER AND SERVANT—*Safe Place to Work—Supervision.*— Where the dangerous condition of the environment, to whatever cause it may be due, is not open and obvious, but has existed for so long a time that the master's non-assignable duty in the premises is no longer suspended, but exists, there is then a present duty on the part of the master to exercise due care by inspection, supervision and superintendence to inform himself, and he is affected with constructive knowledge of all the information which the exercise of such care would bring to him. Whereas, the injured servant, in such case, has no duty resting upon him of affirmative action to discover latent dangers; he may rely upon the assumption that the master has exercised reasonable care in that direction for him; for, as to the servant, in such case, the test is not the exercise of care to discover dangers, but whether the defect is known or plainly discernible by the employee.

12. MASTER AND SERVANT—*Assumption of Risk—Case at Bar.*—In

the instant case, under the circumstances detailed in the eighth syllabus, it was held that the danger incident to the tipping over of the barrel was not a risk which was assumed by the plaintiff.

13. MASTER AND SERVANT—*Contributory Negligence—Case at Bar.*— In the instant case defendant invoked the rule that where two methods are open for the performance of a duty, one dangerous and the other safe for the operator, one who chooses the dangerous rather than the safe method is precluded from recovery, claiming that plaintiff might have ascertained from the foreman in charge of the floor where the glycerine was stored, instead of himself searching for it.

*Held:* That the rule invoked was not applicable to the instant case, the foreman not being present at the time, and there being no evidence in the case that it was the duty of the plaintiff to make such inquiry, or that such was the custom.

Error to a judgment of the Circuit Court of city of Norfolk, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

In this action the defendant in error obtained a verdict and judgment thereon in the court below against the plaintiff in error for damages for a permanent personal injury. The parties will be referred to as plaintiff and defendant in accordance with their positions in the trial court.

The injury was a broken leg of the plaintiff caused by a fall due to the overturning of a 350-lb. barrel of pork on the end of which the plaintiff stepped in the discharge of his duty as a salesman of the defendant in the usual and customary manner and in accordance with a long established arrangement of the goods of the latter in its storeroom and its established method of conducting its business, while he was in search of cases of glycerine to fill an order for a customer; the plaintiff having reasonable grounds to suppose that the glycerine was so located as to make it necessary for him to get upon the barrel to find it; the goods being stored not on shelves, but on the floor and

against the wall of the store-room, the various packages of boxes, etc., being piled upon and behind each other to such a height and width that many articles could not be seen from the floor, although there were narrow passage ways left at intervals extending between the goods back to the wall of the store room.

The barrel of pork in question was a perfectly safe instrumentality for the use aforesaid to which it was put by the plaintiff, if the barrel had been placed in the usual and customary manner for the placement of such barrels in the storeroom; and the duty of putting it in its place in the first place, or of keeping it in position, did not rest upon the plaintiff.

This barrel was but one of a number of like barrels of pork in the storeroom, standing on end, some directly on the floor and some on racks four or five inches from the floor. These barrels were located along in front of the pile of goods stored against the wall, as aforesaid—this being their accustomed location—and they were expected to be used as the plaintiff used them, according to the long pre-established method in which the defendant conducted its business, as aforesaid.

The racks were about three feet wide, about six or six and a half feet long. The barrel, which was over-turned as aforesaid, was on a rack, but not properly placed thereon in the usual and customary manner, in this, that the bottom end of it was not fully on, but nearly half of it projected over the side of the rack, so that when the plaintiff, who weighed 185 pounds, stepped upon the top end of the barrel on the part of it which projected over the side of the rack, the barrel was overbalanced and overturned as aforesaid.

The testimony for the plaintiff is direct and positive that it would have been physically impossible for the barrel of the weight it was to have overturned as it did from

the stepping of plaintiff upon it if it had been properly placed as aforesaid on the rack.

The testimony for the plaintiff is, further, that he was walking along on the top ends of other like barrels, standing as aforesaid, immediately preceding the accident, in search of the glycerine as aforesaid, when he came to a passageway of "about a foot and a half or two feet" wide, which was left, as aforesaid, in the pile of goods extending back to the wall of the room, as a passage way through such goods, and he stepped from the barrel he was on, which was on the floor, across this passage way, upon the end of the barrel which overturned, which was immediately across such passageway, located on the end of a rack next to such passageway, and was the only barrel on such rack. As to the observation the plaintiff made of the barrel which overturned, the following is his testimony:

"Q.   Did you look at that barrel at all before you stepped on it?

"A.   No, sir, only just glanced to see whether there was a barrel, is all.

"Q.   You didn't look before you jumped on it to see whether it was there substantially or not?

"A.   No, sir, I saw the barrel there and took it for granted that it was in proper condition and stepped on it."

There is other testimony for the plaintiff to the effect that he could not have seen that the barrel was not properly placed on the rack "unless he got down" from the barrels he was walking on immediately preceding the accident.

The testimony for the plaintiff is, further, in substance, that the original storing and piling of the merchandise, including the barrels of pork, was not a part of the duties of the plaintiff, but was "in charge of" Mr. Thompson, the assistant superintendent of the defendant.

The testimony for the defendant is, however, that this duty as to the particular barrels of pork above mentioned,

rested upon Mr. Whitten, a foreman of the defendant, who had charge of the placing of all the goods on that and another floor of the storehouse or warehouse, as it is sometimes called in the record. He testified as to the goods on these floors, that he had had for "two and a half years" next preceding the accident, "full charge of them. Everything was left for me to do on them floors."

As to the duty, and the discharge of it, in the original placing and also the duty of subsequently maintaining of the proper placement of the barrels aforesaid, including the barrel which overturned as aforesaid, and on the subject of actual knowledge on the part of the defendant of the displacement of the barrel prior to the accident, this witness testified as follows:

"Q. Had you noticed the barrels that were stored on this third floor previous to the accident?

"A. No, sir. I had charge of placing the barrels there. I always tried to keep them straight, but there were times when they would send any one up there and they wanted a barrel or something down and they would have the barrel out in the floor and leave it setting there and I would have to put it back, but on this occasion I can't say whether the barrel had been moved since it had been placed there or not.

"Q. Do you know how long the particular barrel had been on the rack?

"A. No, sir, I couldn't say.

"Q. Do you know who stored it there?

"A. I had it stored there. I think I had it stored there. I have all the barrels stored on that floor."

There was no evidence in the case, however, that there had been any recent change in the said position on the rack of the barrel which overturned as aforesaid. And there was the direct and positive testimony of an employee of the defendant at the time of and before the accident, who was a witness for the plaintiff, which was, in substance,

that he observed the position aforesaid of the barrel in question as much as "four or five days anyhow" before the accident, and that it certainly remained in that condition for that length of time before. the accident occurred. This witness testified on this subject in part, as follows:

"Q. Are you positive it had been there four or five days?

"A. Yes, I am positive it had been there four or five days.

"Q. Are you positive it had been there as much as a week?

"A. I couldn't say that, no, sir.

"Q. How much of the barrel did you notice was on the rack and how much off the edge of the rack?

"A. I couldn't say, but very near half of it."

The assignments of error involve the action of the trial court in giving and refusing instructions and in refusing to set aside the verdict and grant a new trial on motion of the defendant and in entering judgment upon the verdict of the jury.

### INSTRUCTIONS GRANTED FOR PLAINTIFF.

"1. The court instructs the jury that if they believe from the evidence that it was necessary or usual and customary for the defendant company's employees, in the discharge of their duties, to step or walk on top of heavy barrels of pork in order to see whether other merchandise that they were in search of were piled above and beyond such barrels; and if they further believe from the evidence that the barrel of pork in question was, when stored in the warehouse, placed on a rack projecting over its edge so as to be unsafe in case an employee stepped or walked on the same or had been in such position for such a length of time that the employer, or those in charge of the warehouse room, in the exercise of reasonable care would have

discovered its position; and if they further believe from the evidence that the plaintiff in the discharge of his duty and in the exercise of reasonable care stepped on said barrel, which fell with him because of the position in which it was placed, causing his injuries, they shall find for the plaintiff."

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"3. The court instructs the jury that it is the duty of the master to use reasonable care to provide a reasonably safe place for the employee to work and the employee has a right to assume that the master has performed his duty."

AMONG THE INSTRUCTIONS GRANTED FOR DEFENDANT.

"4. The court instructs the jury that where a person voluntarily enters the service of another he assumes all the risks usually incident to such employment and is presumed to have contracted with respect thereto. If the jury believe from the evidence that the risk is this case was of this character, and that it was open and obvious, the plaintiff is not entitled to recover, and the jury must find for the defendant."

INSTRUCTIONS ASKED FOR BY DEFENDANT AND REFUSED.

"5. The court instructs the jury that a servant is under as great obligation to take care and provide for his own safety from such dangers as are known to him, or are discoverable by ordinary care on his part, as a master is to provide for him.

"6. The court instructs the jury that if they believe from the evidence that the plaintiff had the same knowledge of the condition of the barrels at the point at which the accident happened, or the same means of knowledge as was possessed by the defendant company, and failed to exercise

proper care for his own safety, then the jury must find for the defendant, even though they may believe from the evidence that the said defendant company was guilty of negligence."

*Hughes, Little & Seawell,* for the plaintiff in error.

*Loyall, Taylor & White* and *W. H. Venable,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The pivotal question in the case before us is this:

1. Had the dangerous condition of the instrumentality—the pork barrel—at the time of the injury to the plaintiff—(all set forth in the above statement of the facts)—existed for so long a time and under such circumstances that the defendant had constructive knowledge thereof a sufficient length of time prior to the accident for it to have removed such condition by the exercise of reasonable care?

The case involves an instrumentality in itself safe for the purpose for which it was provided by the master to be used and for which it was used by the injured servant in the due course of the discharge of the duties of his employment; but which was converted into an unsafe and dangerous instrumentality by the position in which it was placed for such use.

[1-6]   The general rule is well settled, that the master is under an absolute obligation—is charged with a nonassignable duty—to use due care in providing and maintaining a reasonably safe environment for his servants while engaged in their work; and since, although the instrumentalities which are provided by the master are in themselves safe if properly placed and used, delinquencies

of co-servants in the discharge of the duties entrusted to them may render the environment or place of work unsafe, it is, in such case, a continuing non-assignable duty of the master to exercise reasonable care, "* * by proper supervision and superintendence, to keep himself informed as to the manner in which the duties entrusted to them" (the co-servants) "are performed." *N. & W. Ry. Co.* v. *Nuckols' Admr.*, 91 Va. 193, 207-8, 21 S. E. 342, 347, 2 Labatt on Master and Servant, sec 585. But it is also well settled that there are limits to the master's obligation of supervision and superintendence just stated. For instance, "he is not bound to supervise the merely executive details of the work to be done by his servants," during the very progress of the work. 2 Labatt on Master and Servant, sec. 586. He is not bound to protect the servant from transitory perils due to "no fault of plan or construction or lack of repair and to no permanent defect or want of safety in the defendant's works, or in the manner in which they had been ordinarily used." *Idem.* sec. 587. Nor from dangers caused by the frequent changes in the progress of the work. *Idem.* sec. 588. Nor from dangers due to the preparation or care of the instrumentality, where such preparation and care of the instrumentality are a part of the work which the injured servant or his co-employee undertook to do. *Idem.* sec 589. Nor "where the delinquent co-servant may have handled or placed a safe instrumentality so carelessly as to convert it, for the time being, into an injurious agency. *Idem.* sec. 590 sub-sec. (a.) There is of course, as is also well settled, a further limitation upon the non-assignable duty of the master of supervision and superintendence, and that is that such duty does not exist where the danger in question is known to the injured servant or is so open and obvious that he is presumed to have knowledge of it, under the settled rules of law on that subject, and is taken to have assumed the risk of such danger. But when the

danger is not known or open and obvious, the other limitations above mentioned merely suspend the continuing duty of supervision and superintendence aforesaid resting upon the master during such time as such an abnormal condition may be reasonably anticipated by the injured servant to exist without the knowledge of the master. During such time the injured servant assumes the risk of the result of the negligence of his co-servants in the discharge of their executive duties in the premises. *Idem.* sec. 591. Such duty of the master, however, cannot be permanently abrogated or discontinued by his entrusting executive details of the work to his servants. He owes a duty to his servants, as aforesaid, to exercise reasonable care to keep himself informed how the executive duties entrusted to them have been performed by their co-servants. Hence, if such an abnormal condition, which causes the injury to a servant, is not merely temporary, but has continued for such a length of time that the master has actual or constructive knowledge of it and he has, nevertheless, allowed it to remain in that condition without taking reasonable steps for the protection of his servants from the danger attendant upon such condition, he is liable. And this is true also in other cases, independently of the cause of the abnormal condition, as when it is the result of an act of a stranger, or of a fellow-servant who is not a vice-principal, or of the operation of extraordinary physical force, or to some circumstance which is left wholly unexplained. 1 Labatt on Master and Servant, sec. 129; 2 *Idem.* sec. 568.

[7] The duty of inspection of such an instrumentality which is incumbent on the master, rests upon precisely the same principles and exists under the same circumstances as does the duty of supervision and superintendence, as aforesaid. 1 *Idem.* sec. 155.

[8] Now in the instant case the question of fact as to

whether the danger in question was open and obvious was submitted to the jury under instruction No. 4 given at the request of the defendant (which is quoted in the statement preceding this opinion). There was ample evidence to sustain a finding of the jury that the danger was not open and obvious, so that that question was concluded in favor of the plaintiff by the verdict of the jury.

[9] The question whether the dangerous condition of the barrel had existed for such a length of time that the master had constructive knowledge of it, was submitted to the jury under instruction No. 1 given at the request of the plaintiff (also quoted in the above statement). There was ample evidence to sustain an affirmative finding of the jury on that question. If the barrel was originally properly placed, and was subsequently misplaced by some co-servant of the plaintiff by a negligent discharge of executive duties touching the details of the work—the possibility of which is suggested in the testimony of Mr. Whitten for the defendant—still, according to Whitten's own testimony it was his duty "to put it back." It was a question for the jury whether if he had gone about the discharging of that duty in a reasonable time he would have ascertained the dangerous position of the barrel—and also whether if the assistant superintendent had discharged his reasonable duty in the premises he would have ascertained the position of the barrel. Hence that question of fact also was concluded in favor of the plaintiff by the verdict of the jury.

(According to the evidence in the case it was a *concessum* that the defendant allowed the dangerous condition to remain without taking any steps for the protection of its servants therefrom.)

[10] It is true that said instruction No. 1 also predicated the liability of the defendant upon the alternate fact, if the jury should so find, that the barrel in question was

originally placed in the unsafe position aforesaid. Accurately speaking this would not have rendered the defendant liable in damages in the premises if this had been but a temporary peril due to the negligence of some co-servant in the discharge of executive duties in the progress of the work, which peril did not remain in existence long enough to affect the defendant with constructive knowledge thereof; but no objection is made before us to the instruction on this ground by the assignments of error, and doubtless none such was made in the court below, where the trial seems to have been had upon the view, concededly regarded as correct, that if the barrel was misplaced when it was originally stored, the defendant was affected with constructive knowledge of its dangerous condition for such a length of time before the accident that it was liable. Doubtless the point under consideration was of no practical value in view of the testimony in the case and hence was not raised in the trial court. At any rate it is not raised and the question is not presented before us for decision whether there was error in such feature of such instruction.

2. We come now to the consideration of the action of the trial court in refusing to give instructions Nos. 5 and 6 asked for by the defendant.

These instructions could properly be given in a case in which the non-assignable duty of the master with respect to providing reasonably safe and suitable instrumentalities or a reasonably safe place for the work of its servants is suspended, because of the danger being open and obvious, or because of the existence of other limitations upon that duty, such as are above mentioned, where the peril is transitory and due to causes such as are above referred to. In such cases the master owes no duty to the injured servant with respect to dangers which are open and obvious, or which are discoverable only by inspection. He, in such cases, is not chargeable with any duty of immediate inspec-

tion or with any constructive knowledge of the condition of the immediate environment of the servant; whereas the servant, is charged with the duty of being watchful for the dangers likely to arise as a result of the ever changing conditions. *Va. Coal & Coke Co.* v. *Asbury's Adm'r,* 117 Va. 683, 86 S. E. 148.

[11] But where the dangerous condition of the environment, to whatever cause it may be due, is not open and obvious, but has existed for so long a time that the master's non-assignable duty in the premises aforesaid is no longer suspended, but exists, then the situation of the master and servant respectively, touching the duty of discovery of the dangerous condition is very different. There is then a present duty on the part of the master to exercise due care by inspection, supervision and superintendence to inform himself, as above set forth, and he is affected with constructive knowledge of all the information which the exercise of such care would bring to him. Whereas, the injured servant, in such case, has no duty resting upon him of affirmative action to discover latent dangers; he may rely upon the assumption that the master has exercised reasonable care in that direction for him; for, as to the servant, in such case, "* * the test is, not the exercise of care to discover dangers, but whether the defect is known or plainly discernable by the employee," in the exercise of reasonable care to avoid open and obvious dangers. *Choctaw, etc., R.* v. *McDade,* 191 U. S. 68, 24 Sup. Ct. 24, 48 L. Ed. 96. To the same effect, *Robinson* v. *Dininny,* 96 Va. 41, 30 S. E. 442; *Richlands Iron Co.* v. *Elkins,* 90 Va. 249, 17 S. E. 890. Almost innumerable other authorities so holding might be cited. Hence we see that the giving of the instruction under consideration in such a case would be improper. They would, indeed, nullify the existence of the non-assignable duty of the master aforesaid in the premises.

It is urged by the defendant that the *McDade* and *Elkins* cases just cited, respectively, involve defective appliances and defective construction. The principle involved, however, is the same as in a case of an unsafe place to work due to a dangerous condition, which is not open and obvious, for which the master is responsible.

The following cases are cited for defendant and urged upon our consideration as sustaining the position that said instructions Nos. 5 and 6 should have been given by the trial court, namely: *Honaker Lumber Co., Inc.,* v. *Call,* 119 Va. 374, 89 S. E. 506; *Russell Creek Coal Co.* v. *Wells,* 96 Va. 416, 31 S. E. 614; *Va. Iron Coal & Coke Co.* v. *Asbury's Adm'r,* 117 Va. 683, 86 S. E. 148; *Lynchburg Foundry Co.* v. *Dalton,* 121 Va. 480, 93 S. E. 587; *Darracott* v. *C. & O. Ry. Co.,* 83 Va. 288, 294, 2 S. E. 511, 5 Am. St. Rep. 266. But these were all cases, either of open or obvious danger, or of transitory perils attendant upon the executive details of the work to be done by the servants, with an absence of any element of permanency of the dangerous condition sufficient to impute constructive knowledge thereof to the master.

[12]    3. A number of cases from other States are cited for defendant upon its position that the danger incident to the tipping over of the barrel was a risk which was assumed by the plaintiff and one Virginia authority not above referred to, is included among them.

The Virginia case cited is that of *Wilson* v. *So. Ry. Co.,* 108 Va. 822, 62 S. E. 972, where the servant was injured, while assisting in unloading 85-pound rails from a railroad car, in consequence of the turning of one of the rails under his foot from some unexplained cause, while the work was being done in the usual manner. Here the danger was a transitory peril and arose from the mere executive details of the work being done by the co-servants and it was, besides, as was held, the result of an accident for which no one could be held responsible.

In *Manley* v. *Minneapolis Paint Co.*, 76 Minn. 169, 78 N. W. 1050, cited, the plaintiff was injured in assisting in unloading a barrel of ocher from a railroad car by rolling it down a skid 2 feet wide and 18 inches long, extending on an incline of 10 inches, to a platform 4 feet above the ground. The plaintiff stood on the skid in front of the barrel with his hand on the top and sides of it to ease it down. It came faster than he expected and he stepped aside, but too far and fell off an unguarded side of the platform and was injured by the fall. The peril arose in the mere executive details of the work, and besides it was open and obvious. See *Richmond Locomotive Works* v. *Ford*, 94 Va. 627, 27 S. E. 509.

In the case of *Mathis* v. *Kansas City, etc., Co.*, 185 Mo. 434, S. W. 66, cited, the plaintiff was himself charged with the duty of placing the plank in position to stand upon in doing his work. That was a part of the work the plaintiff undertook to do.

The same principle is involved in the ladder case of *Borden* v. *Daisy Roller Mill Co.*, 98 Wis. 407, 74 N. W. 91, 67 Am. St. Rep. 816, cited. And as to the alleged defect in the ladder, it consisted in the lack of spikes to prevent its slipping on the floor, which was held to have been an open and obvious danger.

In *Langley* v. *Wheelock*, 181 Mass. 474, 63 N. E. 944, the plaintiff was injured by the falling of one of a number of metal bars of different lengths which stood on end on the floor and rested against the wall of the store, being held in place by pins in planks about four feet up from the floor on the side of the wall. There was nothing to obstruct the view of these pins four feet up from the floor, or of the position of the bars as the plaintiff occasionally worked in a few feet of them and passed to and fro about his work. The court held that the danger was open and obvious, and besides that there was no evidence in the case to show

what caused the bar to fall which injured the plaintiff; although there was an hypothesis that it might have fallen because of the fact that two bars were placed against one of the pins and the thickness of the bars was such that the bar which fell and injured the plaintiff laying on top of another bar projected beyond the end of the pin and, hence, was insecure and from that cause slid and toppled over.

In *Bradley* v. *Forbes Tea & Coffee Co.*, 213 Mo. 320, 111 S. W. 919, cited, the plaintiff knew the tendency of the piles of sacks of coffee to settle and bulge out and hence was held to have assumed the risk of the sacks falling.

In *Hofnauer* v. *White Co.*, 186 Mass. 47, 70 N. E. 1038, the plaintiff, a salesman in defendant's store, was injured by the falling of a medicine chest from a shelf above her. There was no evidence in the case disclosing from what cause the chest fell, except that the shelf was not level. But other chests upon the shelf were not affected by the inclination of it. The court, it is true, said that "for aught that appears its fall may have been attributable to carelessness of an employee in not replacing it securely after it had been taken down and shown to customers." However, there was nothing to obstruct the view of plaintiff of such a position of the chest on the shelf, and she was held to have assumed the risk of the danger, on the ground that it was open and obvious.

In the trap-door cases of *Clough* v. *Hoffman*, 132 Pa. 626, 19 Atl. 299, 19 Am. St. Rep. 620, and *The Theresina* (D. C.) 31 Fed. 90, cited, the cause of the displacement of the cover of the openings in question did not appear and the displacement was but temporary, in each case, not continuing for a sufficient length of time to affect the defendant with constructive knowledge of the dangerous condition. In the case of *Kupp* v. *Rummell*, 199 Pa. 90, 48 Atl. 679, cited, the trap-door was opened immediately before the accident by a co-servant after notice to and as-

sent of plaintiff. The latter, therefore, knew of the dangerous condition and it was not a continuing one for a time sufficient to impute constructive knowledge of it to the defendant.

None of such authorities, therefore, have any controlling bearing on the case at bar.

But one other position of the defendant remains for our consideration, and that is this—

[13] 4. That the plaintiff might have ascertained from the foreman Whitten, who was in charge of the goods on the floor on which the glycerine was stored, where it was, instead of himself searching for it, as he did;—and the rule is invoked that where two methods are open for the performance of a duty, one dangerous and the other safe for the operator, one who chooses the dangerous rather than the safe method is precluded from recovery.

We do not think that the rule invoked is applicable to the instant case.

It is true that Whitten testifies that he knew where the glycerine was stored and could have given the plaintiff that information, if called upon to do so. But he was not out on the floor of the room but back in the cooling room at the time and did not see the plaintiff, nor did the plaintiff see him, when the plaintiff came upon the floor in search for the glycerine. Besides, there is no evidence in the case that it was the duty of the plaintiff to make such inquiry of the foreman, or that such was the custom at any time. On the contrary the plaintiff testified expressly that in searching for the glycerine himself, as he did, he acted in accordance with the custom which had been followed in that regard during the whole period that he had been in the employment of the. defendant prior to the accident (three years and nine months).

For the foregoing reasons we find no error in the action of the trial court or in the judgment under review, and the cause will be affirmed.

*Affirmed.*